MIDDLEBURY COLLEGE *v.* TOWN OF HANCOCK.
(55A2d 194)

May Term, 1947.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion Filed October 7, 1947.

*Asa S. Bloomer* and *Christopher A. Webber* for the defendant.

*Wayne C. Bosworth* for the plaintiff.

BUTTLES, J. The plaintiff in this chancery suit seeks an injunction restraining the defendant from further prosecution of a pending action in Addison County Court for the collection of taxes assessed upon certain tracts of land in the defendant town which were devised to the plaintiff as trustee in trust as a park by Joseph Battell, deceased. The devise was made by the third paragraph of the Battell will which is set forth in full in *Middlebury College* v. *Central Power Corporation of Vermont,* 101 Vt 325, 332, 143A 384, that case being hereafter referred to as the Central Power Corporation case. An injunction is also prayed against other attempts to collect taxes assessed on this land which is claimed to be non taxable because granted, sequestered and used continuously for public and charitable uses.

Findings of fact were made and decree rendered by the chan-

cellor granting the relief prayed for. Defendant comes to this court on exceptions to the 7th, 8th and 9th findings and to the decree, one ground of exception to each finding being that it was not supported by the evidence.

Finding No. 7 reads: "These Hancock lands were dedicated perpetually by Joseph Battell as a public park for the benefit of the citizens of Vermont and visitors within her borders." It is claimed to be erroneous because not in accordance with the true facts as found in finding number four. It is true that the Battell will, quoted in part in finding No. 4, contains language from which, considered alone, it could readily be found that the lands in question were devised in trust for the benefit of Middlebury College and the students thereof, upon condition that citizens of Vermont and visitors within her limits be allowed access thereto. However, the same devise of the same lands was fully considered in the Central Power Corporation case, supra, and it was held from a consideration of the whole clause together with other clauses of the will, and in view of the disfavor with which conditions subsequent are held in the law, together with the absence here of words of determination or reverter, that it was not the intention of the testator to affix a condition to the devise but rather to state the terms upon which the declaration of a trust to the public was made. It was further held that there was a dedication of the lands to a public use and that the public use is primary and characterizes the devise. This exception is not sustained.

Finding No. 8 is as follows: "These Hancock lands are and have been at all material times held and managed by Middlebury College as trustee under the will of Joseph Battell." That the plaintiff received the lands and has since continued in possession thereof under the Battell will and the decree of the probate court is not questioned, it being contended only that the plaintiff has not held and managed the lands as trustee in accordance with the terms of the trust. Some of the evidence disclosed by the transcript which tends to show compliance with those terms is as follows: Certain principles were early adopted by the trustees of the College which were to govern in the administration and management of the land which was to be called "Battell Park." In the management thereof all money received from the sale of lumber or other products went into a separate fund and was used only for park expenses and improvements or held in reserve for that purpose. Ski trails

were laid out in the park which the public were permitted to use; also an area was laid out therein known as the "snow bowl." As many as 200 skiers and spectators have been seen in the park on one day. Pleiad Lake in the park was kept stocked with trout, fishing being permitted to the public upon payment of a small fee. Hunting and hiking were permitted and indulged in by the public. Shelters have been erected for the benefit of hikers over the Long Trail which crosses the park.

Defendant's claim of mismanagement rests on the evidence tending to show that extensive lumbering operations from which a profit resulted were carried on over a number of years, alleged to be in violation of the requirement in the Battell will that the trustee "should neither cut nor permit to be cut thereon any trees whatsoever except such as are dead or down and such as it may be necessary to cut in making and repairing needful roads." The chancellor has found that during the two years ending March 30, 1945, these operations grossed $18,808.21 and that the park showed a net operating profit of $4,918.53 during this period, including the lumbering operations. The evidence relative to plaintiff's management of the park discloses that it could be found that such lumbering operations were carried on with some regularity after about the year 1937, and that the revenues therefrom have been credited to the plaintiff's Battell Park account, resulting in a credit balance in that account of $14,324.69 in December, 1945, as against a debit balance of $33,166.32 on July 1, 1937. We find no evidence that any profit accrued to anyone other than the plaintiff's Battell Park account. From the evidence as to management it could also be found that any cutting of trees in excess of those permitted by the Battell will was done upon expert advice to prevent the spread of infestation by certain insects which destroyed the trees attacked, the trees cut being those already infested or situated so near to infested trees as to be in danger of becoming infested.

██ When a trustee accepts a trust he agrees to carry out its provisions and bring to pass the results which the settlor desired. 3 Bogert on Trusts and Trustees, § 581, p. 1832. And the trustee has a duty to protect the trust property against injury or destruction. He is obligated to the cestuis que trustent to do all acts necessary for the preservation of the trust res which would be performed by a reasonably prudent man employing his own like property for ends similar to those of the trust. Idem, § 582,

p. 1833. *Nevitt* v. *Woodburn,* 190 Ill 283, 60 NE 500; *In re Dreier's Est.,* 83 NJ Eq 618, 92 A 51; *In re Gurlitz' Will,* 235 NYS 705, 134 Misc 160. Obviously it will sometimes happen that the trustee cannot fully perform this duty of protecting the res without at least a technical deviation from some direction of the trust instrument. Ordinarily, of course, application should be made to the court in such a case for instructions. But it would seem that there may be circumstances under which a trustee would have power on his own initiative and without risk to himself to depart from the terms of the trust, in order to save the trust property from destruction and to accomplish the ultimate object of the trustor. 54 Am Jur 234 Trusts, § 295. See Restatement of Trusts, § 167 (2).

*Petition of Conference of Churches,* 352 Pa 470, 43 A2d 1, is in point, although it does not involve the power of a trustee to deviate from the terms of a trust instrument. In that case a condition in a gift deed forbade the cutting or removal from the land of any standing green timber except for necessary driveways. It was apparent there as here that the main purpose of the condition was to preserve the aesthetic value of the forest and it being shown by the testimony of forestry experts that such purpose could be best attained by cutting some of the standing trees, such cutting was held permissible under the circumstances. It was also held that the sale or use of the trees so cut would be allowed to the grantee. There was evidence to sustain the finding in the present case even if "under the will" is construed as "in accordance with the will" of Joseph Battell.

Finding No. 9 reads: "The citizens of Vermont and visitors within her borders have used these Hancock lands for recreational purposes and have enjoyed the forest, mountains, waters and scenery thereon and in connection therewith. These Hancock lands are and at all material times have been a public park, granted, sequestered *and* used for public purposes."

What we have already said indicates that there was evidence sufficient to sustain the first sentence of this finding. The defendant contends that the cutting of timber for profit negatives the second sentence of the finding. We have seen that there was evidence from which it could be found that there was no such cutting of timber for profit as would constitute a commercial transaction on the part of the trustee. But if the fact were otherwise it would

not follow therefrom that the land ceased to be a public park, granted, sequestered and used for public purposes.

It is a general rule that a charitable trust cannot be destroyed by the trustee unless of course by conveyance to a bona fide purchaser. 2 Bogert on Trusts and Trustees, 1231. Generally, any change in the form or character of a trust estate cannot properly be made by a trustee to the prejudice or loss of the trust estate. Clearly of course such a change cannot ordinarily be made in violation of the trustor's intention as disclosed by the terms of the trust. 54 Am Jur 269, Trusts § 342; *In re Upham*, 152 Wisc 275, 140 NW 5, 48 LRANS 1004, Ann Cas 1914 C 376. Here we have a trust for a charitable use, not liable to be defeated by nonuser or alienation in the absence of an express condition. *Middlebury College* v. *Central Power Corp.*, 101 Vt 325, 341, 143A 384. Unwarranted cutting and sale of lumber by the trustee, whatever the result might be as to the trustee, could not prejudice the trust estate or transform a public use into a private use, any more than a similar cutting and sale by a trespasser would have that effect.

The finding is warranted by the evidence.

One ground of the exception to the decree is that the property involved is not exempt from taxation, it is claimed, because it does not come within the provision of P. L. § 590, the material parts of which read thus:

"The following property shall be exempt from taxation:

> IV. Real and personal estate, granted, sequestered or used for public, pious or charitable uses; . . . and lands owned or leased by colleges, academies or other public schools. . . . The exemption of lands owned by colleges, academies or other public schools . . . shall not apply to farming or timber lands owned or leased thereby."

The argument is that being owned by a college these lands are put in the special class covered by the second quoted clause of the statute and that being timber lands owned by a college they are expressly denied exemption. It is further argued on the authority of *Sheldon* v. *Sheldon Poor House Association*, 100 Vt 122, 135A 492, that the placing of these lands by the legislature in a special class by itself negatives its intention to include them in the general first clause of the subsection. The trouble with this argument is

that, regardless of whether the lands can or cannot be' considered timber lands within the meaning of the statute, the college did not own them in the sense required by the statute. That the beneficial ownership was here meant rather than a legal title only as trustee seems apparent from the holding in *Willard* v. *Pike,* 59 Vt 202, 218, 9A 907, 916. Provisions of R. L. 270 which were identical with the provisions of the present statute, except for the later addition of the timber land clause, were there construed, and it was said that "although under our statute ownership is all that is expressly required, it is probable that the legislature did not intend to exempt property simply because owned by an academy. In construing statutes of exemption from taxation regard must be had to the settled rule that they are to be construed most strongly against those who claim their benefit. The ownership must undoubtedly be, not for speculative purposes, but for the appropriate use and benefit of the institution as an academy or a college in carrying out the purposes of its incorporation." Here the plaintiff's ownership was not for speculative purposes, but it had no beneficial ownership. It had only a technical ownership as trustee, a capacity in which an individual or a corporation other than a college or academy could have served as well and it was not for the appropriate use and benefit of the institution as a college in carrying out the purposes of its incorporation. The requirement of the Pike case was applicable here, the lands were not in the class covered by the second clause of the subsection and the question whether they are exempt under the general first class is open for consideration.

The defendant concedes that in the Central Power Corporation case, supra, it was held that these lands were dedicated to a public use but contends that that holding does not control here, because as stated elsewhere in that case, the public use involved in the law of eminent domain may not be the public use involved in the law of taxation and the further statement that in each case the distinction between public and private uses lies in the character of the use, and the determination of the character of a given enterprise cannot be made upon consideration of legal principles alone; economic conditions and the needs of the people must have attention.

The defendant cites for consideration the hardship to the Town of Hancock resulting from withdrawal of a considerable part of its area from taxation and consequent increased burden upon the remainder, and also the fact that the state, by virtue of P. L.

§§ 609, 610 and 621 taxes its own forest and park lands and game refuges. It may be noted that such taxes are levied on an appraisal of the land not to exceed $3.00 per acre, plus a special tax on commercial cuttings of timber when made, whereas the lands here in question were appraised at an average of over $15.00 per acre. We deem these to be matters which well might receive attention of the legislature, rather than economic conditions to be considered by the court in determining whether there was a public use within the meaning of the taxation exemption statute.

■ The statement in the Central Power Corporation case, supra, that the lands were dedicated to a public use was absolute and not restricted or limited in any way. It is the primary as distinguished from an incidental use of the property that determines whether it is exempt from taxation. 61 CJ 402; *Town of West Hartford* v. *Conn. Fair Ass'n.*, 88 Conn 627, 92A 432; *People* v. *Muldoon*, 306 Ill 234, 137 NE 863, 864, 28ALR 857. In the present case the cutting was incidental to the primary use of the property by the public as a park and it appears that such use was not interfered with or lessened by reason of the cutting.

In *Stiles* v. *Newport,* 76 Vt 154, 171, 172, 56A 662, the furnishing of water by the village to its own inhabitants is said to be protective of the public health and therefore a public use within the meaning of the laws relating to taxation. Similarly the use of a public park, which is important to general health and welfare (see *Central Power Corporation* case, 101 Vt 325, 337, 143A 384, and cases cited) would seem to be a public use within the meaning of those laws.

The defendant contends that the decree is not supported by the findings since there was a net profit from lumber operations upon the property. This would be merely a circumstance tending to show that the use of the property was private and not public. As we have seen, other findings lead to the conclusion that the primary use of the property was public, and the cutting and sale of lumber was merely incidental. In *Stiles* v. *Newport, supra,* (76 Vt p. 170) it is said that the use being public, the taking of compensation for water furnished by the village to its own inhabitants does not require that it be otherwise treated. The fact that an incidental profit may accrue to the municipality and that this may in time become available for the payment of general corporate expenses will not subject the system to taxation as serving a private use.

The defendant has cited several cases in which the owners were free to choose between a public and a private use of the property. We have seen that this plaintiff as trustee, controlled by the provisions of the Battell will, did not have that freedom of choice. The exceptions to the decree are not sustained. *Decree affirmed.*