Guilbert Marsh, et al. v. Department of
Employment Security

[340 A.2d 93]

No. 56-75

Present: **Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.**

Opinion Filed June 3, 1975

*Zander B. Rubin, Esq.,* Vermont Legal Aid, Inc., St. Johnsbury, for Plaintiffs.

*Raymond S. Fitspatrick, Esq.,* Montpelier, for Defendant.

**Smith, J.** The Vermont Department of Employment Security's interpretation of the interrelationship between 21 V.S.A. § 1344(a)(2) and § 1344(b)(1), provisions concerned with disqualification for unemployment benefits, has come under challenge. Under that interpretation, the date on which certain unemployed individuals first come in contact with the Department's personnel has assumed great, and we feel undue, importance.

The amendment to 21 V.S.A. § 1344, which is the source of the present controversy, took effect on July 1, 1974. Marsh and two other individuals, each acting independently, filed claims for benefits in late 1974. All three were found to be disqualified under § 1344(a)(2)(A) because they had voluntarily left their last employing unit without good cause attributable to the employer. No appeals were taken from these determinations.

A period of "high level unemployment", as defined in § 1344(b)(2), began in Vermont with the week ending January 11, 1975. Subsequent to this date, the three claimants again filed claims for benefits with the Department. These claims were denied, and the claimants were then apprised of the Department's interpretation.

Section 1344(a)(2) provides that a person who has voluntarily quit his job is disqualified for benefits "[f]or any week benefits are claimed, except as provided in . . . subsection (b) below, until he has performed services in any employment in this or another state and has had earnings in excess of six times his weekly benefit amount. . . ." It is undisputed that, when the exception does not apply, this earnings requirement serves, in effect, as a permanent disqualification for those unable to rejoin the ranks of the employed.

When the exception of subsection (b) applies, the person who voluntarily quits is only disqualified "for not more than twelve nor less than six consecutive weeks following the filing of a claim for benefits, as may be determined by the commissioner according to the circumstances, when it is found that he would otherwise be disqualified under [§ 1344(a)(2)]." If an individual who has been disqualified for a certain number of weeks is able to satisfy the earnings requirement within that period the disqualification is purged. 21 V.S.A. § 1344(b)(1).

Under the Department's interpretation, subsection (b) applies only with respect to those individuals who filed their initial claim for benefits after January 11, 1975, and an intervening period of "high level unemployment" does not affect the earnings requirement disqualification of those who had filed prior to that date. The Department declined the opportunity to issue a declaratory ruling on its interpretation under 3 V.S.A. § 808. The claimants then sought declaratory and injunctive relief under 3 V.S.A. § 807 in the Washington Superior Court for themselves and all others similarly situated. That court, pursuant to V.R.A.P. 5(a), now presents the following four questions here. Paraphrased for the purpose of brevity, they are:

A. Has the Department properly interpreted § 1344 (a)(2)?
B. Has the Department properly interpreted § 1344 (b)(1)?
C. Should the claimant plaintiffs be able to obtain a new determination of disqualification of from six to twelve weeks after the beginning of a period of "high level unemployment" without having to satisfy the originally imposed earnings requirement?
D. If the Department's interpretation of § 1344 is proper, does that section violate the equal protection clause of the Fourteenth Amendment of the United States Constitution?

To answer these questions, this Court need not examine beyond the wording of the statute if its plain language clearly discloses its intent. *State* v. *Santi,* 132 Vt. 615, 617–18, 326 A.2d 149 (1974) ; *Hambley* v. *Town of St. Johnsbury,* 130 Vt.

204, 206–07, 290 A.2d 18 (1972). Both parties argue in their briefs that the plain language is dispositive; the plaintiffs, unlike the Department, offer some reasoning in support of their assertion. They point to the specific exception in § 1344(a)(2) referring one to subsection (b) and the reference back to subsection (a)(2) in subsection (b)(1). They point out that these provisions impose disqualifications "for any week benefits are claimed," § 1344(a)(2), and "following the filing of a claim for benefits." § 1344(b)(1). Nowhere does the word "initial" modify "filing", and the Legislature could have utilized this word if its intent had coincided with the Department's subsequent interpretation. The plain language of § 1344 does not support the Department's interpretation.

Under this interpretation, the type of disqualification a person who voluntarily quits his job receives is based solely on a fortuitous circumstance, the date on which that individual files his first claim with the Department. This is irrational and certainly is not the liberal construction that the Unemployment Compensation Act is entitled to. *In re Moore,* 128 Vt. 581, 586, 269 A.2d 853 (1970). It is an attempt to exclude from the less stringent disqualification determination of § 1344 (b)(1) those who filed for benefits prior to January 11, 1975, where the statute manifests no intent to make such exclusions. *See In re Potvin,* 132 Vt. 14, 18, 313 A.2d 25 (1973). To the contrary, § 1344(b)(1) is legislative recognition of the common sense fact that it is harder to find a new job in a period of "high level unemployment" than in times of low unemployment. The search for a new job, of course, is no easier for the person who quit, or initially filed, during happier economic times than for the person who quit, or initially filed, during the period of "high level unemployment", and we cannot believe that the Legislature intended the effect of the Department's interpretation.

Accepting the interpretation of § 1344 sought by the plaintiffs does not improperly construe that statute "in a manner dissipative of moneys not intended by the legislature to be disbursed without satisfaction of specified prerequisites." *In re Moore, supra,* 128 Vt. at 586, *accord, In re Platt,* 130 Vt. 329, 331, 292 A.2d 822 (1972). The Department argues that, under its interpretation, a person who initially filed his claim in a

period of "high level unemployment" does not receive a new earnings requirement disqualification when that period ends. It is, of course, improper for this Court to rule on the correctness of that facet of the Department's interpretation in the instant case. However, this argument strongly suggests that the motive behind the Department's interpretation is administrative convenience rather than concern over dissipation of funds.

We hold that the Department has erroneously interpreted the interrelationship between § 1344(a)(2) and § 1344(b)(1). Our resolution does not require consideration of the certified constitutional question. *State* v. *Santi, supra,* 132 Vt. at 616, 326 A.2d 149 (1974); *Eurich* v. *Coffee-Rich, Inc.,* 130 Vt. 537, 544, 298 A.2d 846 (1972).

As noted at the outset, the three plaintiffs were initially disqualified under § 1344(a)(2)(A). The class they are representing in this action includes others disqualified under subsection (A) as well as individuals initially disqualified under §§ 1344(a)(2)(B) and (C). This opinion should not be construed as approval of the appropriateness of the class since no issue has been raised in this regard.

*Questions A and B are answered in the negative; Question C is answered in the affirmative; Question D is not appropriate for our consideration in light of the previous answers.*