## Martin Nolan, et al. v. Madelyn Davidson, Commissioner of Department of Employment Security

[357 A.2d 129]

No. 350-75

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed April 6, 1976

*Zander B. Rubin,* Vermont Legal Aid, Inc., St. Johnsbury and *Michael Lipson,* Vermont Legal Aid, Inc., Burlington, for Plaintiffs.

*Raymond S. Fitzpatrick,* Montpelier, for Defendant.

**Smith, J.** This case was initiated in Washington Superior Court as an action authorized by 3 V.S.A. § 807, seeking declaratory and injunctive relief. The suit raises questions as to the validity of a Vermont Department of Employment Security rule of general applicability interpreting and implementing sections 1344(b)(1) and 1344 (a)(2) of Title 21, V.S.A. Pursuant to V.R.C.P. 23(b)(2), the plaintiffs filed their suit as a class action, and it was so certified by the superior court. The case comes before this Court prior to the entry of final judgment by virtue of Rule 5(a) of V.R.A.P. and the agreement of the parties and the presiding judge of the Washington Superior Court that the dispute raises questions of such weight as to warrant reporting the action before final judgment.

The agreed facts reveal that the plaintiffs, and the members of the class they represent, filed claims for unemployment benefits with the Department during a period of high level unemployment which had begun the week of January 11, 1975. At that time each was issued an initial determination finding that the claimant had left his/her last employment voluntarily without good cause. None of the plaintiffs appealed this determination. Therefore, in accord with 21 V.S.A. § 1344(b) (1) each was given a fixed disqualification of between six to twelve weeks after which they would be eligible for benefits. This fixed week disqualification applies solely in periods of high level unemployment as defined by 21 V.S.A. § 1344(b) (2). In normal periods of low level unemployment, the rather draconian "work requirement" disqualification is uniformly applied to "voluntary quits" under § 1344(a)(2). This work

requirement is a complete denial of benefits of indefinite tenure until the claimant finds employment and earns wages equal to six times his weekly benefit. Effectively, as we observed in *Marsh v. Department of Employment Security,* 133 Vt. 425, 340 A.2d 93, 94 (1975), this prerequisite acts as a permanent bar to those voluntary quit claimants unable to secure employment.

As previously noted, the plaintiffs originally filed in a period of high unemployment. However, during the time span in which their fixed disqualifications were still in effect, the state left the period of high unemployment. Immediately upon entering this new period of low level unemployment, the Department issued E.D.P.M. Bulletin No. 102 which states:

> All determinations . . . rendered on or after October 6, 1975 will impose work requirement disqualification only, even though the first week of disqualification is prior to the week ending October 11, 1975, provided the disqualification period would extend at least through the week ending October 11, 1975.

In accordance with this interpretation, when the fixed disqualifications ended, each plaintiff was given an amended determination imposing a work requirement which effectively denied them benefits.

Pursuant to V.R.A.P. 5(a), the following questions have been certified to this Court for resolution prior to judgment below:

(1) Whether the Department has properly interpreted 21 V.S.A. §§ 1344(b)(1) and (a)(2)?

(2) Whether the proper interpretation of 21 V.S.A. §§ 1344(b)(1) and (a)(2) should be that claimants who are disqualified for benefits during a period of "high level unemployment" under 21 V.S.A. § 1344(b)(1), and receive a fixed disqualification of between 6–12 weeks, are eligible for benefits at the end of such period without having to satisfy a work requirement, even if the period of "high level unemployment" ends before the fixed disqualification period has terminated?

(3) If the Department's interpretation of §§ 1344(b)(1) and (a)(2) is correct, whether those sections deny

plaintiffs either the due process of law or the equal protection of the laws in violation of the 14th Amendment to the U.S. Constitution?

■ ■ Undoubtedly, the key element in this appeal involves determining to which interpretation, that espoused by plaintiffs or the one enforced by the Department, the language of 21 V.S.A. § 1344(b)(1) lends itself. The function of this Court in such circumstances is to apply to the facts as accurately as possible the intent of the Legislature as evidenced by the statute itself. In pursuing this goal, the Court is guided by certain canons of statutory construction. Foremost among these is the rule that when the meaning of a statute is plain on its face, this Court is required to enforce the statute according to its express terms. *State v. Santi,* 132 Vt. 615, 617, 326 A.2d 149 (1974); *Swanton v. Highgate,* 131 Vt. 318, 325, 305 A.2d 586 (1973); *State v. Bartlett,* 128 Vt. 618, 622, 270 A.2d 168 (1970); *Marsh v. Department of Employment Security, supra.* In respect to this particular statute, it is to be remembered that the Unemployment Compensation Act, as remedial legislation, is to be interpreted in line with its benevolent objectives, and therefore no claimant should be excluded from its provisions unless the law clearly intends such an exclusion. *In re Potvin,* 132 Vt. 14, 18, 313 A.2d 25 (1973); *In re Moore,* 128 Vt. 581, 586, 269 A.2d 853 (1970).

■ Turning to the language of 21 V.S.A. § 1344(b)(1), it is beyond doubt that the interpretation currently applied by the Department cannot logically be reconciled with the unambiguous terms of the statute:

> In periods of "high level unemployment" an individual shall be disqualified for benefits for not more than twelve nor less than six consecutive weeks immediately following the filing of a claim for benefits. . . .

If we were to apply the meaning attributed the statute by the Department, we would be adding terms requiring that the consecutive weeks fall within an uninterrupted period of high level unemployment. This Court is not at liberty to attribute to the Unemployment Compensation Act provisions which the General Assembly did not see fit to incorporate; neither may

we enlarge the scope of its terms by a strained interpretation of its language. *Nurmi* v. *Vermont Employment Security Board*, 124 Vt. 42, 197 A.2d 483 (1963).

Accepting the interpretation sought by the Department would subject a voluntary quit claimant to the vagaries of economic conditions. As employment figures fluctuated over a period of time a claimant could possibly find himself in a virtual revolving door, first incurring one disqualification and then the other. Such a result, of course, would be patently absurd. It is a fundamental rule in regard to any statute that no unjust or unreasonable result is presumed to have been contemplated by the Legislature. *State* v. *Reynolds*, 109 Vt. 308, 310, 1 A.2d 730 (1938). The plaintiffs here, having once been purged of the original disqualification under 21 V.S.A. § 1344(b)(1), are eligible for benefits under the Act. The statute requires only that the disqualification be for certain "consecutive weeks immediately following the filing of a claim for benefits". Nowhere is it made to appear in the section that the Legislature intended that the consecutive weeks run exclusively in a period of high level unemployment. The plain language of the statute is dispositive of the matter. We hold that the Department has erroneously applied the provisions of 21 V.S.A. §§ 1344(b)(1) and (a)(2) under the circumstances presented.

Our determination as to the first certified question precludes the need to consider the constitutional arguments raised, since final disposition of the appeal does not require it. *Juaire* v. *Juaire*, 128 Vt. 149, 152, 259 A.2d 786 (1969); *Chase* v. *Billings*, 106 Vt. 149, 155, 170 A. 903 (1934).

*The answer to the first certified question is in the negative. The answer to the second certified question is in the affirmative. We do not reach the constitutional issues raised in the third certified question due to our previous answers.*