### Governor Clinton Council, Inc., No. 364 Boy Scouts of America v. Emil Koslowski, D. F. Spengler, and Paul Brazer, Listers in and for the Town of Stratton; and Viola A. Clark, Tax Collector in and for the Town of Stratton

[403 A.2d 689]

No. 202-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed May 3, 1979

Motion for Enlargement of Time Pursuant to Rule 40 Granted
May 15, 1979

*Witten & Carter, P.C.*, Bennington, for Plaintiff.

*Divoll and Doores,* Bellows Falls, for Defendants.

Billings, J. The listers and the tax collector of the Town of Stratton appeal from an order of the Windham Superior Court upholding the plaintiff-appellee's claim that its real property in that town is exempt from local taxation. We conclude that the plaintiff-appellee is not entitled to the full measure of relief granted, and reverse in part.

The Governor Clinton Council, Inc. (the Council), is a New York nonprofit corporation, registered to do business in Vermont. It holds a local charter from the Boy Scouts of America, a nonprofit organization chartered by act of the Congress of the United States. The Council owns approximately 1,700 acres of land in the Town of Stratton, which it operates as a semi-wilderness camp, known as the Stratton Mountain Scout Reservation (the Reservation), throughout the summer, and on weekends during the rest of the year.

Although substantial sums have been expended in the construction of improvements extending throughout most of the Reservation, different portions of the Council's holding vary greatly in the intensiveness of their development and utilization. The most concentrated development centers around Grout Pond, which has a developed waterfront. Most of the water-based activity on the Reservation occurs here, and the area serves as the base for the Council's outpost camping program.

Some five to six hundred acres of the Reservation are managed for timber production in a multi-purpose area, under an agreement with the New England Forestry Foundation. The multi-purpose goals of the management program include recreation and education. The Council has occasionally realized income from selective hardwood sawlog cutting on this tract. Sales totalling $55,291.66 were made in the interval between 1948, when the land was acquired, and June of 1977, when the superior court entered its findings in this case. This income makes up a component of the general income of the Council, which is used to pay that portion of the operating and maintenance expenses of the Reservation not covered by fees charged for the use of the facilities. Several hiking trails

run through this area. A number of outpost campsites are also located in these managed lands.

A tract of approximately 340 acres has been set aside as land to remain forever wild. While no extensive recreational or timberland management practices occur on this land, scouts occasionally visit the area to observe its flora and fauna.

Towns are authorized to assess and collect taxes on the value of property located within their borders. 32 V.S.A. §§ 3401–5295. The Council claims that its total land holdings in the Town of Stratton are exempt from taxation under 32 V.S.A. § 3802(2), which was amended in 1967 by Public Act No. 156 to exempt

> real and personal property owned by and used for the purpose of its work by a nonprofit organization chartered by act of the Congress of the United States, such as a Red Cross, boy scout, girl scout, boy or girl organization.

The Town of Stratton made no attempt to tax any part of the Reservation from 1967 to 1974. In 1974, the selectmen of the town notified the Council that most of the acreage ("timberland 1,418.73 acres + 3½ miles powerline") was being appraised and listed on the grand list, leaving untaxed only 184 acres, more or less, and the buildings thereon. The Council protested, claiming an exemption for all its land under the statute above quoted. In October of 1974, the Council received a delinquent tax notice in the amount of $736.72, which included a demand for payment. The Council received a similar notice and demand in November of 1975 for delinquent taxes in the amount of $711.80. In May of 1976, the listers notified the Council that it was doubling the appraisal on its timberland and power line.

In June of 1976 the Council brought the present action for declaratory and injunctive relief. The defendant town officers answered by maintaining that the exemption statute was unconstitutional, and that, in any case, neither the timberland nor the "forever wild" tract fell within the scope of the exemption conferred.

The superior court heard the case, issued detailed findings of fact and conclusions of law, and granted relief in the following terms:

WHEREFORE . . . it is hereby ORDERED and ADJUDGED:

1. that the real property owned by the Plaintiff in the Town of Stratton is exempt from taxation pursuant to the provisions of 32 V.S.A. 3802(2).

2. that the Defendant LISTERS are ordered to correct the Grand List of the Town of Stratton so as to show that the Plaintiff's real property is exempt from taxation.

3. that the TAX COLLECTOR and her successors in office are permanently and strictly enjoined from levying, enforcing, extending or collecting any taxes against the Plaintiff on real property owned by it in the Town of Stratton.

4. that payments of real property taxes, if any, paid by the Plaintiff to the Town of Stratton during the years 1974, 1975, 1976 or 1977 are to be returned to the Plaintiff.

The superior court concluded that the power line was erroneously included as real property on the grand list for the reason that it is personal property. Both parties concur in this determination.

The appellants argue that the exemption statute in issue violates Article 9 of the Vermont Constitution, which declares that "no part of any person's property can be justly taken from him, or applied to public uses, without his own consent . . . ." The appellants claim that this provision places it beyond the Legislature's power to provide for a property tax exemption that is not conditioned upon the vote of the affected town.

It is true that our Legislature has chosen to condition certain exemptions upon the vote of the affected taxing authority. See, e.g., 32 V.S.A. § 3832(1), (6), and (7), so conditioning in certain cases the general exemption from taxation of "real and personal estate granted, sequestered or used for public, pious or charitable uses" declared in 32 V.S.A. § 3802(4). The Council claims exemption under a different and more specific enactment, and the town officials do not argue on this appeal that the Legislature conditioned that exemption on a town

vote. They urge only that the failure of the Legislature to do so presents a defect of constitutional magnitude.

■ In Vermont, the General Assembly "has all the power necessary for the legislation of a sovereign, independent state, and possesses *all* the law-making power of the people, except so far as it is withheld by the Constitution itself." *Town of Bennington* v. *Park,* 50 Vt. 178, 191 (1877) (emphasis in original). *Colton & More* v. *City of Montpelier,* 71 Vt. 413, 45 A. 1039 (1899) makes it clear that this law-making power includes the power to exempt from taxation, and dictates our rejection of the appellants' Article 9 challenge.

> The general right to make exemptions is involved in the right to apportion taxes, and must be understood to exist [i]n the supreme legislative power, unless expressly forbidden. [Citations omitted.] Art. 9 of the bill of rights does not abridge this power. It has never been construed to abridge the power of the legislature on this subject. On the contrary, throughout the entire legislative history of this State, the power of the legislature to declare what property should be exempt from taxation, has been recognized and exercised. Thus a practical interpretation has been given to Art. 9, contrary to that for which the defendant contends.

71 Vt. at 415, 45 A. at 1040.

■ The appellants also argue a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. One who seeks to void a state taxing measure on equal protection grounds undertakes a very weighty burden. In *Kahn* v. *Shevin,* 416 U.S. 351 (1974), the United States Supreme Court reaffirmed the long-standing rule that

> '[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.' *Lehnhausen* v. *Lake Shore Auto Parts Co.,* 410 U.S. 356, 359. A state tax law is not arbitrary although it 'discriminate[s] in favor of a certain class . . .

if the discrimination is founded upon a reasonable distinction, or difference in state policy,' not in conflict with the Federal Constitution. *Allied Stores* v. *Bowers,* 358 U.S. 522, 528.

*Id.* at 355. Our cases require "only that the classification or distinction rest on a real, unfeigned difference; have some relevance to the legislative purposes; and lead to a difference in treatment which is not so disparate as to be wholly arbitrary." *Vermont Motor Inns, Inc.* v. *Town of Hartford,* 134 Vt. 52, 55, 350 A.2d 369, 371 (1975).

■ The purpose behind the tax exemption contained in 32 V.S.A. § 3802(2) is to assist the specified groups in promoting their organizational purposes. This is a legitimate state interest, see Vt. Const. ch. II, § 68, and the statute furthers that interest in a rational manner. The groups who benefit are well defined and the discrimination drawn in their favor has not been shown to be wholly arbitrary. See *Clark* v. *City of Burlington,* 101 Vt. 391, 397, 143 A. 677, 679 (1928). Thus the statute does not violate the Equal Protection Clause of the Fourteenth Amendment.

■ The appellants have directed most of their energies to the argument that the Council's use of the lands in question does not bring them within the statutory exemption. Concerning the most highly developed and intensively used land there is no conflict at all, since the appellants are not asserting any right to tax it. The appellants' claim concerning the balance of the Reservation lands, consisting of the timberland and the land set aside as wilderness, is that these are not "used for the purpose of [the Council's] work" within the meaning of the exemption statute. We conclude that the superior court's determination of exemption is correct with respect to the timberland, but is unsupportable with respect to the wilderness tract.

In applying the general exemption contained in 32 V.S.A. § 3802(4) for "real and personal estate . . . used for public, pious or charitable uses," we have consistently held that the primary use of the property governs its taxability. *Medical Center Hospital of Vermont, Inc.* v. *City of Burlington,* 131 Vt. 196, 199, 303 A.2d 468, 470 (1973) ; *Gifford Memorial Hos-*

*pital* v. *Town of Randolph,* 119 Vt. 66, 72, 118 A.2d 480, 484 (1955); *Middlebury College* v. *Town of Hancock,* 115 Vt. 157, 164, 55 A.2d 194, 198 (1947). When the Legislature amended 32 V.S.A. § 3802(2) in 1967 to provide the specific exemption here in issue, it must be taken to have acted with knowledge of this consistent and long-standing judicial construction of the use requirement in the exemption statute. *State* v. *Anair,* 123 Vt. 80, 81, 181 A.2d 61, 63 (1962); *Scott* v. *St. Johnsbury Academy,* 86 Vt. 172, 175, 84 A. 567, 568 (1912). We conclude that, in requiring that property owned by an exempt organization be "used for the purpose of its work," the Legislature did not intend to incorporate the primary use test evolved in the line of cases arising under 32 V.S.A. § 3802(4).

We must construe the statute in a reasonable manner, *Nolan* v. *Davidson,* 134 Vt. 295, 299, 357 A.2d 129, 132 (1976), and must ascertain the legislative intent from a consideration of the entire exemption statute, having regard to both the subject matter of the legislation and its ramifications. *Andrews* v. *Lathrop,* 132 Vt. 256, 261, 315 A.2d 860, 863 (1974). Especially in light of our rule that exemption statutes must be strictly construed against those who claim their benefit, *Medical Center Hospital of Vermont, Inc.* v. *City of Burlington, supra,* we cannot assume that the Legislature intended to enact a return to the rule allowing an exemption whenever property benefits a qualifying organization in a purely incidental manner, as when a school acquires property which serves its educational purposes in no other way than by generating a profit, which the school then applies to its educational endeavors. See *Troy Conference Academy* v. *Town of Poultney,* 115 Vt. 480, 485–86, 66 A.2d 2, 6 (1949), wherein we pointed out that the Legislature, through the enactment of No. 33 of the Acts of 1910, changed the old rule exempting lands of a college even when held merely for purposes of investment and rented for purposes not directly connected with the running of the institution. Our rejection of such a radical interpretation is supported by the Legislature's long acquiescence in our primary use decisions, which foreclose application of the old doctrine in cases arising under the general exemption provision of 32 V.S.A. § 3802(4), although, as we

have pointed out, the primary use test is not directly applicable to the Council's claim of exemption.

We conclude that an organization specified in 32 V.S.A. § 3802(2) must show that the property for which it seeks an exemption under that section is directly and substantially utilized in furtherance of its organizational purposes. While the generation of income will not defeat exemption, the lands must be put to some other use that directly serves the goals sought to be fostered by the exemption. Furthermore, that use must be bona fide and provable; a token use will not meet the threshold of substantiality.

The Council's purposes, as stated in its certificate of incorporation duly filed with the Secretary of State of New York, include developing the character and usefulness of its members, improving the mental, social, and physical condition of young men, promoting the ability of boys to do things for themselves and others, training them in scoutcraft, and teaching them patriotism, courage, self-reliance, and kindred virtues. The superior court made detailed findings which establish the use of the timberland for scouting purposes. For instance, the court found that the timber management practices serve the Council's goals for the camp in numerous ways. The New England Forestry Foundation has demonstrated its marking and cutting practices to scouts as a part of the Council's forestry merit badge program. The scouts go off trails passing through the managed areas and use those areas for scouting activities. The scouts cut openings in the forest canopy and stack brush to promote shelter and habitat for wildlife. In addition, each year the Council selects a timberland of approximately 25 acres and assigns each scout in the forestry merit badge program approximately one half acre for his own timber management activities. The court found that the ownership of, or easy access to, a large undeveloped tract enhances the Council's ability to provide merit badge programs of an outpost camping nature.

The appellants point to certain evidence in the case, and argue that we must construe it most strongly against the Council since it is claiming the benefit of the exemption. The appellants cite *University of Vermont* v. *Town of Essex*, 129

Vt. 607, 612, 285 A.2d 728, 731 (1971) where we repeated our rule that statutes of exemption are to be construed most strongly against those who claim the benefit. This rule of statutory construction has nothing to do with our weighing of the evidence adduced below. Our function as an appellate tribunal reviewing the lower court's handling of evidence is merely to supervise the trial court for procedural irregularity or clear error. We are bound by the findings unless they are shown to be clearly erroneous. The appellants have not made any such showing.

The findings in the case do not, however, support exemption of the wilderness lands. The superior court concluded that "the 'forever wild' tract is not used for purposes unrelated to scouting." The sole support for this conclusion consists of a finding that the scouts visit the area during the summer for educational purposes to observe its flora and fauna. There is no finding that the use is substantial, and the evidence in the case is quite to the contrary, indicating that the area is visited only about once a summer for observation. The court apparently grounded its conclusion on the lack of a showing of any use of the tract other than its educational use. This ignores the plain fact that the mere holding of land constitutes a use. It would, for instance, be competent for a court to conclude, in a case arising under 32 V.S.A. § 3802(4), that the holding of a school building for investment purposes outweighed any direct use for educational purposes, thus rendering the former the primary use, although the latter was the only visible use. It would be similarly competent for a court to conclude in a case arising under 32 V.S.A. § 3802(2), the provision here in issue, that the mere holding so predominated as to render the immediate and tangible use of the property insubstantial. Since we must always look to the practical consequences of the statutory scheme in construing legislation, *Andrews* v. *Lathrop, supra,* we note that the right to hold land without being subject to taxation may constitute a substantial detriment to the affected locality and a significant advantage to the landowner. We construe "use" to reach such holding. Such use ought not to result in exemption from taxation absent the conferral of a substantial public benefit such as the tax exemption law was designed to foster.

250

Although the Council's physical use of its wilderness lands is direct, the Council has not shown it to be substantial. Its claim of exemption must therefore fail.

The order of the superior court, reproduced *supra,* is too broad. The order determines the taxability of the Council's lands forever, declares the Council's right to a refund for any taxes paid through 1977, and grants equitable relief based on those determinations. Since the taxability of the Council's lands in any year depends upon factual determinations in accordance with the principles announced herein, any relief pertaining to the period beyond June of 1976, when the Council brought its action, is plainly improper.

*Affirmed in part, reversed in part and remanded for entry of an order consistent with the views expressed herein.*

This case was assigned to Mr. Justice Hill at the October Term, 1978. At the April Term, 1979, it was reassigned to Mr. Justice Billings.

Hill, J., dissenting. I respectfully dissent from the holding that tax exempt status under 32 V.S.A. § 3802(2) depends on whether property is "substantially utilized in furtherance of [the taxpayer's] organizational purposes" and from the consequence that the Boy Scouts' "forever wild" area is taxable.

By the following language, the Legislature has unambiguously decreed that certain "boy scout" property shall be exempt from taxation:

> The . . . following property shall be exempt from taxation:
>
> . . . .
>
> (2) . . . real and personal property *owned by and used for the purpose of its work* by a nonprofit organization chartered by an act of the Congress of the United States, such as a Red Cross, boy scout, girl scout, boy or girl organization.

32 V.S.A. § 3802(2) (emphasis added). The trial court concluded that all of the land, including the "forever wild" area, is owned and used by the Boy Scout organization for the purposes of its work.

Its findings establish that the wilderness tract is intentionally undeveloped and that it is used to enhance the Scouts' understanding of the environment. The area is visited during the summer by Scouts for educational purposes, including the observation of flora and fauna. They are also taken there so they can observe land in its natural state, that is, without management or improvement. The court also found that the Boy Scouts have an environmental award for learning the names of plants and animals, and concluded that "understanding the environment, conservation and forestry are important achievements consonant with scouting objectives."

Clearly, this supports the conclusion that the property falls within the terms of the statute, i.e., it is "used for the purpose of [the organization's] work." Hence, the "forever wild" area should be tax exempt. Nonetheless, the majority holds that the claim of exemption must fail. In reaching that conclusion, it adds an additional element to the wording of the statute. It requires a showing that the property is "substantially utilized in furtherance of the organization's objectives."

But no authority supports its proposition that the Legislature intended the exemption to be conditioned on the quantum of use. On the contrary, where the Legislature intended to more narrowly restrict exemptions, it explicitly did so. It should be noted, for example, that in order to be tax exempt, the real and personal property owned by a post of any veterans' organization must be used as the principal meeting place of the post, 32 V.S.A. § 3802(2), a Young Men's Christian Association building must contain a free public reading room, 32 V.S.A. § 3802(6), and the grounds and property owned and occupied by agricultural societies must be used annually for agricultural fairs, 32 V.S.A. § 3802(9).

By requiring Boy Scout property to be "substantially utilized," the majority substitutes its judgment for the Legislature's in an area of uniquely legislative concern. The implicit judgment in its holding is that if the property is not used "substantially," it is a luxury and ought not be subsidized with a tax exemption. But the statute does not exempt property that is "substantially utilized"; it exempts property "used for the purpose of [the organization's] work." And I find no reason to confine the exemption to narrower limits

than the terms of the statute fairly imply. Accordingly, I must respectfully dissent.

I am authorized to state that Mr. Justice Daley joins in the foregoing dissent.