# Roland H. Webster v. Department of Employment and Training

[451 A.2d 1104]

No. 146-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed September 7, 1982

*James M. Libby, Jr.*, Vermont Legal Aid, Inc., Montpelier, for Plaintiff-Appellant.

*Matthew R. Gould,* Montpelier, for Defendant-Appellee.

**Underwood, J.** The claimant, Roland Webster, appeals a decision by the Employment Security Board (Board) which disqualified him from continued unemployment compensation benefits on the ground that he voluntarily quit his last job without good cause attributable to the employer. We affirm.

The claimant, an experienced granite cutter who was unemployed and drawing benefits, was referred by his union business agent to Northeast Granite Company to fill an opening. After working one and a half days, he quit, and reapplied for continued benefits.

Ordinarily, an employee who quits a job voluntarily without good cause attributable to his employer is disqualified from benefits. 21 V.S.A. § 1344(a)(2)(A). The claims examiner, however, agreed with the claimant's assertion that health considerations made him unable to keep up with the pace the employer required. It held that the voluntary quit disqualification did not apply because he had merely "failed to accept an offer of work which proved unsuitable, after trial." The employer appealed to the appeals referee, who sustained the claims examiner.

The employer appealed again, to the Employment Security Board, which reversed the appeals referee, holding:

> [T]he claimant did not refuse unsuitable work after a trial period, but, rather, voluntarily left his last employing unit without good cause attributable to his employer. Accordingly, he must be disqualified for unemployment compensation benefits.

The claimant's appeal attacks only that part of the Board's opinion which overturns the appeals referee's determination that the claimant merely left work which proved to be unsuitable after trial. He argues that although the Board's findings of fact are supported by the evidence, they are carefully tailored to lead to a conclusion inconsistent with both the letter and purpose of the Unemployment Compensation Act. We disagree.

We have often stated the purpose of the Act and the spirit in which it is to be interpreted. Typical is *Porter* v. *Depart-*

*ment of Employment Security,* 139 Vt. 405, 412, 430 A.2d 450, 454 (1981), in which we stated:

"[T]he Unemployment Compensation Act, as remedial legislation, is to be interpreted in line with its benevolent objectives, and therefore no claimant should be excluded from its provisions unless the law clearly intends such an exclusion." *Nolan* v. *Davidson,* 134 Vt. 295, 298, 357 A.2d 129, 131 (1976). See also *Jenkins* v. *Department of Employment Security,* 135 Vt. 210, 212, 373 A.2d 533, 534 (1977). The act must be applied in a manner consistent with the stated purpose of removing the economic disabilities and distress resulting from involuntary unemployment. *In re Platt,* 130 Vt. 329, 331, 292 A.2d 822, 824 (1972).

■ Thus as *Porter* makes clear, the Act was intended to aid those whose joblessness is involuntary. Here the claimant had a job and left it. He does not challenge the Board's conclusion that he quit voluntarily, without good cause attributable to his employer. Nor does he disagree with the Board's conclusion that "the employment in question was well within the claimant's prior skills and experience and cannot therefore, be found to be unsuitable on the basis that the employment was materially different than his prior employment history or his prior training and skills." Rather, the claimant argues only that this work was unsuitable because it was detrimental to his health. The relevant statute expressly directs that health and physical fitness be considered in determining the suitability of particular work. 21 V.S.A. § 1344(a)(2)(D).

■■ Accordingly, we have recognized that an individual's physical inability to perform certain work may justify him in refusing it as unsuitable. *Lanctot* v. *Department of Employment Security,* 134 Vt. 281, 283, 356 A.2d 531, 533 (1976). We have indicated, however, that when an offer of work is declined, "[t]he plaintiff has the burden of establishing that the work offered is not suitable." *Martin* v. *Department of Employment Security,* 138 Vt. 475, 477, 417 A.2d 932, 934 (1980).

The Board concluded in this case that the claimant did not sustain his burden of proof that the work offered by North-

east Granite Company was unsuitable. The Board spelled out the reasons for this conclusion:

> The only possible question relating to the suitability of the employment involves whether or not this particular employment presented a risk to the claimant's health. Other than the claimant's unsupported belief that working at such a rapid pace was detrimental to his health, the only evidence in the record relating to the claimant's health is a letter from the claimant's physician. That letter, however, indicates that the claimant's physician found "no reason to restrict his physical activity whatsoever." In light of that statement and an absence of other evidence indicating that this particular employment was detrimental to the claimant's health, we are unable to conclude that the work in and of itself was unsuitable because it presented a risk to the claimant's physical well being.

Upon review of the Board's findings, we are convinced that they provide an adequate factual basis to support its conclusion. The uncontested findings are that the claimant, 57, is an experienced granite cutter with a heart murmur; and that a letter from the claimant's doctor indicated that this condition provided "no reasons to restrict his physical activity whatsoever." The Board found further that the claimant worked a day and a half then quit because he judged the pace to be more than he could physically maintain, but that he had received no criticism about the speed of his work from his employer, nor made any attempt to obtain lighter working conditions.

The claimant's belief that his health was impaired, and his testimony to that effect, are contradicted by the letter from the very same physician who diagnosed his heart murmur. Based on these two pieces of evidence alone, we are unable to hold that the Board erred in finding itself "unable to conclude that the work in and of itself was unsuitable because it represented a risk to the claimant's physical well-being."

The Board has nowhere found implicitly or explicitly that the claimant is not a credible witness. It holds simply that the unsupported testimony of an experienced granite cutter as to his belief that his work impairs his health falls

short of the weight of evidence necessary to sustain his burden of proof to establish the unsuitability of this work. We are satisfied that the record supports the Board's findings which in turn support its conclusion.

*Affirmed.*