## Deborah Littlefield v. Department of Employment and Training

[487 A.2d 507]

No. 83-411

Present: Hill, Underwood, Peck and Gibson, JJ., and Keyser, J. (Ret.), Specially Assigned

Opinion Filed December 14, 1984

Deborah Littlefield, pro se, Bristol, Plaintiff-Appellant.

Steven J. Kantor, Montpelier, for Defendant-Appellee.

**Underwood, J.** The claimant, Deborah Littlefield, appeals a decision by the Employment Security Board (Board) disqualifying her from receiving extended unemployment compensation benefits. The Board upheld the rulings of the Appeals Referee and the Claims Examiner, each of whom had held that the claimant was disqualified from receiving extended benefits because she had left the employ of her "last employing unit"

due to a health condition which was not attributable to that employing unit. 21 V.S.A. §§ 1344(a)(3), 1344(c), 1423 (a)(2). The Board disqualified the claimant from receiving extended benefits for the week ending February 12, 1983, and until such time as she had earned wages in excess of four times her weekly benefit amount. 21 V.S.A. § 1344(c).

Claimant contends, first, that the Board erroneously concluded that she left the employment of the Counseling Service of Addison County (CSAC) for health reasons, and, second, that the Board erroneously found CSAC to be her "last employing unit." We agree with her second contention and reverse.

The pertinent facts in this case are as follows. On January 29, 1982, the claimant's employment with the Addison County State's Attorney's Office was terminated. She applied for unemployment compensation benefits on February 11, 1982. Pursuant to 21 V.S.A. § 1343(a)(4), the week ending February 13, 1982, was designated as the required one week waiting period, for which she was not entitled to unemployment benefits. Beginning with the week ending February 20, 1982, the claimant was entitled to and received weekly unemployment benefits in the amount of $104.00. These payments continued for twenty-six weeks, allowing her to receive the maximum benefits permitted under 21 V.S.A. § 1340. Upon the exhaustion of these benefits, the claimant applied for federal supplemental unemployment compensation benefits. The claimant received ten weeks additional unemployment compensation under this program; her last week of eligibility was the week ending November 20, 1982. As of that date, she had exhausted all sources of then-available unemployment compensation benefits.[1]

On November 23, 1982, the claimant began working for CSAC, at an hourly rate of $4.00. Her work for CSAC spanned a period of 45 days (November 23, 1982, to January 6, 1983), during which time she worked a total of twelve hours, earning a total of $48.00 in wages. On January 12, 1983, the claimant suffered a broken kneecap in an accident which was unrelated to her work with CSAC. Following her accident, she notified

---

[1] Extended unemployment benefits, 21 V.S.A. §§ 1421–1426, apparently became effective in January, 1983, and claimant would have been eligible to apply for such extended benefits if she had not commenced employment with CSAC.

CSAC that her injury prevented her from continuing to carry out her duties as a mental health aide, but that she would contact CSAC when she was able to resume her duties. The claimant never notified CSAC when she was again physically able to resume her duties as a mental health aide. On March 4, 1983, the claimant began full-time employment as a secretary at Middlebury College. On March 29, 1983, she submitted a formal letter of resignation to CSAC.

On February 10, 1983, the claimant applied for extended unemployment compensation benefits. 21 V.S.A. §§ 1421–1426. She claimed entitlement to such benefits for the six-week period from February 6 through March 19, 1983. The claimant was denied extended benefits as a result of having left her employment with CSAC due to nonwork-related health conditions.

## I.

Ms. Littlefield contends that her decision not to pursue her activities as a CSAC mental health aide did not constitute a termination of employment for reasons not attributable to CSAC. The bases for her contention are first, that she was not "employed" by CSAC, and second, that her decision to temporarily suspend her activities for CSAC were not caused by health problems.

This Court has recently reiterated our longstanding position that

> [t]he findings of the referee and the Board "are to be affirmed if supported by credible evidence, even in the presence of substantial evidence to the contrary."
> . . . The test to be applied is whether the evidence in an employment security appeal is adequate to support the findings—whether the record contains " 'any credible evidence fairly and reasonably supporting' " those findings.

*Miner* v. *Department of Employment & Training*, 144 Vt. 211, 213, 475 A.2d 233, 235 (1984) (quoting *In re Wheelock*, 130 Vt. 136, 141, 139, 287 A.2d 569, 572, 571 (1972) ). "The findings of the Board will not be disturbed unless, 'considered as a whole, there is no evidence to support the decision.' " *Stryszko* v. *Department of Employment & Training*, 144 Vt. 198, 199, 475 A.2d 230, 231 (1984) (quoting *Hill* v. *Depart-*

*ment of Employment Security*, 141 Vt. 455, 456, 449 A.2d 969, 969 (1982)). With these tests in mind, we turn to the facts of the present case.

■■ Ms. Littlefield was clearly employed by CSAC, as evidenced by her signed contract with them. The fact of employment is not dependent upon receipt of a minimum amount of compensation; the claimant admits an uncontested intent to enter into an employment contract. Furthermore, the refusal of the claimant to continue her activities as a mental health aide following her accident on January 12, 1983, constitutes a suspension of her employment with CSAC for nonemployment-related health reasons. Except for her injury, incurred on January 12, 1983, there is no evidence to indicate that she would not have continued to perform her duties on the same basis as before. Such a suspension need not be formal or permanent to constitute a termination under 21 V.S.A. § 1344 (a) (3). Although the claimant may have been able to do secretarial work, she was unwilling or unable to continue, due to physical restrictions, her duties as a mental health aide. This was the position which she had contracted to fill. On the basis of the facts in the record before us, we are unable to conclude that the Board erred in its determination that the claimant terminated her employment with CSAC for nonemployment-related health reasons.

## II.

Ms. Littlefield's second contention is that her employment with CSAC was not sufficient to allow CSAC to be deemed her "last employing unit" under 21 V.S.A. § 1344(a) (3), and that the Board misinterpreted the meaning of that statutory term when it found CSAC to be her last employing unit.[2] We have

---

[2] This Court recognizes that in a long line of cases concerning administrative law, we have held that "[u]nless there are compelling indications of error, the construction of a statute by those who are charged with its execution will be sustained on appeal." *In re Village of Hardwick Electric Department*, 143 Vt. 437, 444, 466 A.2d 1180, 1183 (1983) (citation omitted); see also *Town of Cambridge* v. *Bassett*, 142 Vt. 171, 177, 453 A.2d 413, 416 (1982) (applying this standard of judicial review to a board of appraisers of the Property Valuation and Review Division, an administrative board with strictly appellate responsibili-

had the occasion, in other cases, to interpret the meaning of language contained in the Unemployment Compensation Law, 21 V.S.A. ch. 17. The present case, however, gives us our first opportunity to address the meaning of the statutory term "last employing unit" in the context of 21 V.S.A. § 1344(a)(3).

 We start with the premise that "when the meaning of a statute is plain on its face we must enforce it according to its express terms." *Jones* v. *Department of Employment Security,* 140 Vt. 552, 554, 442 A.2d 463, 464 (1982) (citing *Nolan* v. *Davidson,* 134 Vt. 295, 298, 357 A.2d 129, 131 (1976); *State* v. *Santi,* 132 Vt. 615, 617, 326 A.2d 149, 151 (1974)).

> We have recognized that where the meaning of words is clear and not ambiguous, we must construe them in their ordinary sense. We also consider that the [Unemployment Compensation Act], as remedial legislation, is to be construed liberally in favor of the claimant. And, while we give weight to administrative construction, only the legislative intent as expressed in the language of the statute is binding upon us.

*Grenafege* v. *Department of Employment Security,* 134 Vt. 288, 290, 357 A.2d 118, 120 (1976) (citations omitted). When, as in the present case, there are two opposing interpretations of statutory language—that is, whether the term "last employing unit" means last in time or last one chargeable—"[t]he function of this Court . . . is to apply to the facts as accurately as possible the intent of the Legislature as evidenced by the statute itself." *Nolan, supra,* 134 Vt. at 298, 357 A.2d at 131.[3]

---

, ties). For the reasons set out in Part II of this opinion, we find that there are compelling indications that the Board erred in its determination of what is meant by the term "last employing unit."

[3] Where statutory language is clear and unambiguous, and its provisions seem "unfair or unjust, the remedy is to change the law itself. This can be effected by the legislature and should not be done by judicial fiat under the guise of statutory interpretation." *Riddel* v. *Department of Employment Security,* 140 Vt. 82, 88, 436 A.2d 1086, 1089 (1981) (citing *Donoghue* v. *Smith,* 119 Vt. 259, 267, 126 A.2d 93, 98 (1956)). In the present case, however, we find the statutory language to be unclear and ambiguous.

 This Court has consistently noted

that the underlying purposes of unemployment legislation are to remove economic disabilities and distress resulting from involuntary unemployment, and to assist those workers who become jobless for reasons beyond their control. Thus, since the Unemployment Compensation Act is remedial legislation, "a claimant should not be excluded from the provisions of the Act unless such an exclusion is clearly intended by law."

*Donahue* v. *Department of Employment Security*, 142 Vt. 351, 354, 454 A.2d 1244, 1246 (1982) (citations omitted). Problems involving statutory interpretation arise from

the unavoidable fact that implementation of any legislative enactment requires that bare-bone statutory directives be subjected to the vagaries of human judgment and reason before they can be made practicable. Frequently the result is that the courts are left with the task of construing and applying the generalized principles set out in the statutory schemata to a specific set of facts.

*Jenkins* v. *Department of Employment Security*, 135 Vt. 210, 212, 373 A.2d 533, 534 (1977) (citation omitted). Having set forth the basis for our interpretation of the language of 21 V.S.A. § 1344(a)(3), we turn now to determine if CSAC was in fact or at law the "last employing unit" of the claimant.

Ms. Littlefield's unemployment benefits are derived from her base period employment with the Addison County State's Attorney's Office. This base period employment determined her basic eligibility for unemployment benefits, the amount of her weekly benefits and the beginning of her benefit year. It was this employment history which entitled her to twenty-six weeks of unemployment compensation benefits and ten weeks of federal supplemental compensation. Consequently, this employment history would also have constituted the basis for her eligibility for extended benefits under 21 V.S.A. § 1423(a). Although it was technically employment, the claimant's work with CSAC turned out to be of such small magnitude that it normally would have had no effect in the computation and qualification of unemployment benefits. Given the statutory provisions concerning disregarded earnings, 21 V.S.A. § 1338a,

her wages from CSAC, which totaled $48.00 and never exceeded $16.00 in any one week, would have had no impact on her qualification to receive her full weekly benefits within an initial unemployment compensation period. Similarly, that employment alone would not have affected her eligibility for extended benefits under 21 V.S.A. § 1421(8) (A). Therefore, had the claimant *not* been injured, she could have continued working for CSAC, earning up to a maximum of $21.00 per week, without any impact on either her eligibility for extended benefits, or the amount of her weekly benefit thereunder. Except for the injury, the claimant could have received six weeks of benefits at $103.00 per week for the period starting with the beginning of the state's eligibility period on January 23, 1983, and ending March 19, 1983, the week prior to her new employment with Middlebury College.

The Department of Employment and Training (Department) claims that Ms. Littlefield's termination of her work with CSAC, due to nonwork-related health reasons, would disqualify her for normal unemployment benefits. 21 V.S.A. § 1344(a) (3). Such a disqualification, it argues, would therefore also disqualify her for any extended unemployment benefits. 21 V.S.A. § 1344(c). In sum, it argues that the fact that she was injured in a nonwork-related accident bars her from receiving benefits for which she would otherwise be eligible. This would not only be patently unjust, but it is also unfounded in the law. The Department bases its disqualification argument solely on the provisions of 21 V.S.A. § 1344(c), as applied to eligibility for extended benefits through 21 V.S.A. § 1423 (a) (2). The central question is therefore whether the claimant's eligibility for regular unemployment benefits would have been affected by 21 V.S.A. § 1344(a)(3).

In determining the applicability of 21 V.S.A. § 1344(a) (3) in the present case, we first review the basis for such a disqualification. As explained by the Department, the unemployment compensation program is funded by employer contributions. Unemployment claims are therefore paid by a claimant's "employing unit." In certain specified instances, where a claimant's employer is not responsible for the unemployment of the claimant, the legislature has made a policy decision to disqualify the claimant from receiving unemployment benefits, thereby not holding the employer financially accountable. Thus,

where an employee is injured in a nonwork-related accident, the employer's liability for the payment of resulting unemployment benefits is avoided by making the claimant ineligible for such benefits. We note that this is a policy determination made by the legislature, and it is not our province to determine the wisdom of that policy. Applied to the present case, that policy would appear to disqualify the claimant from receiving unemployment benefits which would be subsequently charged against CSAC. Clearly, CSAC is an "employing unit" as defined by 21 V.S.A. § 1301(4). The question is, however, whether CSAC is *Ms. Littlefield's last* employing unit?

As we noted in a case involving what is now 21 V.S.A. § 1344(a)(4), "[t]he Act does not define 'last' or 'last employed' and its meaning thus becomes the subject of judicial interpretation. And we are by no means confined to a literal interpretation of the statutory language." *In re Hatch,* 130 Vt. 248, 251, 290 A.2d 180, 182 (1972). As noted above, Ms. Littlefield would have been entitled to extended unemployment benefits had she not injured her knee; it is only the fact that her nonwork-related knee injury forced her to discontinue her work with CSAC which, according to the Department's interpretation, bars her from receiving extended benefits. "It is a fundamental rule in regard to any statute that no unjust or unreasonable result is presumed to have been contemplated by the Legislature." *Nolan, supra,* 134 Vt. at 299, 357 A.2d at 132. The disqualification of the claimant solely due to her knee injury is not only unjust and unreasonable, it is also clearly contrary to the statutory purpose as outlined above, which is to assist workers who, for reasons beyond their control, become jobless. *Donahue, supra,* 142 Vt. at 354, 454 A.2d at 1246. "To subscribe to [the Board's] draconian interpretation of the relevant provisions of the Unemployment Compensation Act would be to defeat the remedial nature of that legislation." *Wallace* v. *Department of Employment Security,* 134 Vt. 513, 514, 365 A.2d 517, 519 (1976).

We reach the same conclusion through consideration of the funding policy underlying the Unemployment Compensation Act. As noted above, in most instances it is the last employing unit which is intended to bear the cost of a claimant's unemployment benefits. Under the provisions of 21 V.S.A.

§ 1325(e), an employing unit may become chargeable for the subsequent unemployment benefits claimed by an employee only when that employing unit has paid the claimant a total of $695.00 in wages. In the present case, the Department admits that Ms. Littlefield's last chargeable employing unit is not CSAC; rather, it is her previous employer, the Addison County State's Attorney's Office. Therefore, any extended benefits allowed to the claimant would be chargeable not to CSAC, but to the Addison County State's Attorney's Office, the employer which provided the claimant's basis for her initial eligibility for unemployment compensation benefits. The claimant's qualification for extended benefits would therefore not be contrary to the legislative scheme for funding the program. We note that "the Court is not free to enlarge [the statute's] scope by an unwarranted interpretation of statutory language." *Hunt* v. *Department of Employment Security,* 142 Vt. 90, 93, 453 A.2d 391, 392 (1982). Neither are we " 'at liberty to read into the statute provisions which the legislature did not see fit to incorporate . . . .' " *Archer* v. *Department of Employment Security,* 133 Vt. 279, 281, 336 A.2d 172, 174 (1975) (quoting *Nurmi* v. *Vermont Employment Security Board,* 124 Vt. 42, 46, 197 A.2d 483, 486 (1963)). The interpretation that we adopt herein is clearly warranted by the statutory intent and policy considerations.

For the reasons stated above, the interpretation of the term "last employing unit" adhered to by the Board in the present case is inimical to the policy of the statute and cannot stand. We therefore hold that an employing unit cannot become the last employing unit for any particular employee until that employing unit becomes responsible for any subsequent unemployment benefits claimed by that employee, pursuant to 21 V.S.A. § 1325. Because the claimant in the present case left her last employing unit, the Addison County State's Attorney's Office, for nonhealth-related reasons, the disqualification provisions of 21 V.S.A. § 1344(a)(3) do not apply.

*Judgment reversed and cause remanded for appropriate computation and award of extended benefits.*