### Burr and Burton Seminary v. Town of Manchester; Village of Manchester

[782 A.2d 1149]

No. 00-294

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed August 24, 2001

*Orland Campbell, Jr.,* and *Matthew C. Samuelson,* Manchester Village, for Plaintiff-Appellant.

*Steven F. Stitzel* of *Stitzel, Page & Fletcher, P.C.,* Burlington, for Defendant-Appellee.

**Johnson, J.** Appellant taxpayer Burr and Burton Seminary appeals from a decision of the Bennington Superior Court granting the Town of Manchester summary judgment on taxpayer's claim that two buildings it owns are exempt from property taxes under 32 V.S.A. § 3802(4). The court held that the buildings are not exempt because the buildings are not directly connected with the running of Burr and Burton Seminary. We affirm in part, and reverse in part.

Burr and Burton Seminary is a nonprofit corporation that operates a private high school in Manchester, Vermont known as the Burr and Burton Academy. Burr and Burton has traditionally supplied housing to the headmaster, as part of the compensation package, on a building on campus known as the Head House. In 1996, Burr and Burton acquired a small lot in Manchester two miles from the school's main

campus and constructed a house on the land to be used as the Head House. The on campus house was converted to office space. The school's headmaster is required to live in the Head House and pay certain related expenses. During the 1998-1999 school year, the Head House was used for school purposes approximately eleven times for various events including meetings, dinners and parties for faculty, students, trustees and staff. In April 1997, the new Head House was added to the grand list of the Town and appraised at approximately $290,000.

Burr and Burton also owns a building on Williams Street in Manchester that the school used as dormitory space for students. At the end of the school year in 1994, Burr and Burton listed the Williams Street property for sale with a realtor. Pending a sale, Burr and Burton rented the property to various tenants. The building was sold in 1999. In April 1998, the Williams Street property was added to the grand list of the Town and appraised at approximately $177,000.

Burr and Burton grieved the appraisals to the board of listers and then to superior court on the grounds that the properties are tax exempt. The school argues that the properties fall within the exemption for "lands owned or leased by colleges, academies or other public schools" in § 3802(4) because both properties are owned by the school. The Town contends that this statute requires that the properties be used by the school for an educational purpose and that neither of the properties is used accordingly. On cross-motions for summary judgment, the court agreed with the Town and held that neither the Head House nor the Williams Street property is directly connected to the running of the school. Thus, the properties do not qualify for the exemption. This appeal followed.

■ In reviewing a motion for summary judgment we apply the same standard as the trial court. Summary judgment is appropriate when the record demonstrates that there is no genuine issue as to material fact, and the moving party is entitled to judgment as a matter of law. *Guiel v. Allstate Ins. Co.*, 170 Vt. 464, 467, 756 A.2d 777, 780 (2000).

The statute at issue, 32 V.S.A. § 3802, states in relevant part:

The following property shall be exempt from taxation:

. . . .

(4) Real and personal estate granted, sequestered or used for public, pious or charitable uses; real property owned by churches or church societies or conferences and used as parsonages and personal property therein . . . ; real and

personal estate set apart for library uses and used by the public and private circulating libraries . . . ; lands leased by towns or town school districts for educational purposes; and *lands owned or leased by colleges, academies or other public schools* . . . ; and lands and buildings owned and used by towns for the support of the poor therein . . . . *The exemption of lands owned or leased by colleges, academies or other public schools, shall not apply to lands or buildings rented for general commercial purposes* . . . ;

(Emphasis added.) This case concerns the exemption only for "lands owned or leased by colleges, academies or other public schools" (lands owned exemption). Any statutory exemption from property tax is to be strictly construed against the taxpayer. *Stowe Preparatory School, Inc. v. Town of Stowe*, 124 Vt. 392, 396, 205 A.2d 544, 546 (1964).

At issue in this case is the status of the properties for the purpose of property tax assessments. The parties are in agreement that Burr and Burton owns the properties and puts the properties to some use. The dispute focuses on whether there is, in fact, a use requirement in the statute and whether to qualify for the exemption the use of the property must serve an educational purpose. If § 3802(4) requires only ownership, then both properties qualify for the exemption. If, however, the lands owned exemption also requires that the qualified owner use the land for an educational purpose, then we must analyze whether the Head House and Williams Street property comply with this requirement.

■ Our paramount goal in statutory construction is to give effect to the Legislature's intent. See *Burlington Elec. Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 335, 576 A.2d 450, 452 (1990). The school correctly notes that the plain language of this exemption makes no mention of use. The statute says that an exemption shall be granted to "lands owned or leased by colleges, academies or other public schools." 32 V.S.A. § 3802(4). We recognize, however, that in some circumstances the literal meaning of the words employed cannot prevail. See *In re Hatch*, 130 Vt. 248, 251, 290 A.2d 180, 182 (1972). Therefore, when the plain meaning of the statute contradicts the intent of the Legislature, we are not confined to a literal interpretation of the statutory language. *In re C.S.*, 158 Vt. 339, 343, 609 A.2d 641, 643 (1992). In construing tax exemptions, we must ascertain the legislative intent from a consideration of the entire exemption statute and with regard to both the subject matter of legislation and its ramifications.

*Governor Clinton Council, Inc. v. Koslowski*, 137 Vt. 240, 247, 403 A.2d 689, 694 (1979).

The school's proposed construction conflicts with the basic purpose of the exemption statute. The institutions that may claim an exemption under the clauses of § 3802(4) include churches and other religious organizations, libraries, all manner of charities, and at issue here, colleges, academies and other public schools. 32 V.S.A. § 3802(4). It is fair to conclude, therefore, that the purpose of the statute is to free from taxation land that is being used to serve some public purpose. We have stated that our policy is to avoid construing a statute in a manner that would render the statute ineffective, or lead to irrational consequences. *Addison County Cmty. Action v. City of Vergennes*, 152 Vt. 161, 165-66, 565 A.2d 233, 235 (1989). We would violate this principle of construction were we to extend this exemption to any land in which title is merely held by a public school. If there is no educational use to the land, there is no benefit to the state, and, consequently, no reason why the Legislature would forgo the benefit of taxation for this land. We cannot assume that the Legislature intended to "allow[] an exemption whenever property benefits a qualifying organization in a purely incidental manner." *Koslowski*, 137 Vt. at 247, 403 A.2d at 694.

Over one hundred years ago we recognized that the Legislature's purpose in enacting the statute was to exempt property used for educational purposes. In *Willard v. Pike*, 59 Vt. 202, 9 A. 907 (1886), the exemption was challenged for several buildings owned by St. Johnsbury Academy that were currently used for a boarding house, a club house for students, and a future residence for the principal on the grounds that the buildings were not being used as required by the exemption. The Court initially admitted that "[o]ur statute stands on the ground of ownership alone. There is no mention of use." *Id.* at 217, 9 A. at 915. Despite this statement, the Court concluded:

> Although . . . ownership is all that is expressly required, it is probable that the legislature did not intend to exempt property simply because owned by an academy. In construing statutes of exemption from taxation, regard must be had to the settled rule that they are to be construed most strongly against those who claim their benefit. *The ownership must undoubtedly be, not for speculative purposes, but for the appropriate use and benefit of the*

*institution* as an academy or a college in carrying out the purposes of its incorporation.

*Id.* at 218, 9 A. at 916 (emphasis added). The Court allowed the exemption because what matters for the purposes of the statute is not only whether the property is owned by an educational entity, but also whether the property is used for an educational purpose.

The Court incorporated this recognized purpose into later holdings. In *Broughton v. Town of Charlotte*, 134 Vt. 270, 356 A.2d 520 (1976), the issue was whether an owner who leases her land to an educational nonprofit is entitled to the "land owned" exemption. We held that she was not, because ownership is as important a component of the exemption as use. The Court stated the "prevailing Vermont rule concerning the exemption of land [under the "lands owned" clause]" was the one stated in *Willard* and then quoted the above passage. *Id.* at 274, 356 A.2d at 522-23. The Court continued, "[o]bviously, then, the rule to be followed in Vermont in respect to real property . . . is that there can be no freedom from taxation *unless the property is both owned by a qualified body and used by such a body in pursuit of one of its exempt purposes.*" *Id.* at 274, 356 A.2d at 523 (emphasis added).

Similarly, the amount and type of use of a property were critical in *Troy Conference Academy v. Town of Poultney*, 115 Vt. 480, 66 A.2d 2 (1949). At issue there was whether a building used mainly as a dormitory for teachers qualifies for the lands owned exemption. The Court conducted an analysis of the property's use, examining the several uses of the building compared with the purpose of the school and the need for those specific uses to further the purposes of the school. The Court held that the building was used for educational purposes, as opposed to general commercial purposes, and would have allowed the exemption, but for the operation of a 1941 exception for colleges.* *Id.* at 489, 66 A.2d at 8. In *Troy Conference*, there was no specific mention of the ownership-based language of the statute, and the Court clearly based its decision on the property's educational use.

⬛ Thus, a property's educational use, although not a part of the language of § 3802(4), is a well-embedded part of the exemption's requirement. The statement in *Willard* in 1886 outlines the only sensible interpretation of the statute given the exemption's purpose. The Legislature, had it disagreed with our construction, has had over

---

* In 1941, the Legislature passed 1941, No. 12, § 1 (codified at 32 V.S.A. § 3831(a)), which states that any property acquired after April 1, 1941 by a college, university, or fraternity is not subject to the "lands owned" exemption.

one hundred years to amend the statute accordingly. Indeed, subsequent to *Willard*, the Legislature amended the statute in a manner that strengthens this construction. The amendment states that the lands owned exemption "shall not be construed as exempting lands or buildings rented for general commercial purposes." 1910, No. 33, § 1. By explicitly excluding land used for a commercial purpose, the Legislature emphasized that land owned by a qualifying organization cannot be put to any purpose it desires and still qualify for the exemption. If land used for a commercial purpose is not exempt, the Legislature could not have intended that other noneducational uses of the property, including no use at all, would qualify the land for the exemption. It is consistent with the purpose of the statute, therefore, to hold that the school must use its property for an *educational purpose*, in addition to own it, in order to claim the exemption.

■ Applying this rationale to the specific properties in this case, we find the Williams Street property is no longer used for an educational purpose. Indeed, the Williams Street property plainly violates the requirement that the property not be rented for general commercial purposes. See 32 V.S.A. § 3802(4). Since 1994, Burr and Burton has been renting the Williams Street property to paying tenants, in order to derive a cash flow from the building. This use is the definition of rental for a general commercial purpose. That the Town did not add the Williams Street property to the grand list until 1998 is irrelevant. Once Burr and Burton ceased using the property for an exempt purpose, it was no longer entitled to the tax exemption. Therefore, the Williams Street property is not tax exempt.

■ The Head House, however, does qualify for the exemption. Exempting the property as a residence for the headmaster and a venue for school functions is consistent with other similar cases. The Head House is analogous to the faculty dormitory in *Troy Conference*. That the house is part of the headmaster's compensation package does not bar the property from qualifying for the exemption. As we stated in *Troy Conference*, "[h]ow the rent for rooms is received, whether their salaries include quarters, or the cost is deducted, or the teacher is required to pay such costs direct, makes no difference." 115 Vt. at 489, 66 A.2d at 8. The essential requirement, however, is that the Head House has "other uses directly connected with the operation of the plaintiff institution." *Id.* at 486, 66 A.2d at 6. Those other uses include the eleven various school related events hosted at the Head House. The Town tries to distinguish *Troy Conference* from this Head House

based on factors such as the distance from campus and the number of times a year the facility is used for events. We find these distinctions unpersuasive. A Head House located two miles from campus in a small community that hosts school related functions approximately once a month does serve the educational needs of the institution. Finally, that a residence for a headmaster or faculty is used for an educational purpose is well supported by cases from other jurisdictions. See *id.* at 486-88, 66 A.2d at 6-8 (citing cases). Thus, the Head House is exempt from property tax according to 32 V.S.A. § 3802(4).

Burr and Burton also argue that the properties are exempt from taxation under the "public, pious or charitable uses" clause of § 3802(4). Whether property qualifies for this exemption is properly determined by the test announced in *American Museum of Fly Fishing, Inc. v. Town of Manchester*, 151 Vt. 103, 110, 557 A.2d 900, 904 (1989). Because Burr and Burton did not present a claim based on this exemption to the trial court, we are not required to consider it. *Morais v. Yee*, 162 Vt. 366, 372, 648 A.2d 405, 410 (1994).

*Affirmed in part, reversed in part.*