## Andrew C. and Margaret R. Sigler Foundation v. Town of Norwich

[807 A.2d 442]

No. 01-433

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed July 26, 2002

*Geoffrey J. Vitt* and *Eric D. Jones* of *Vitt & Jones, PLC*, Norwich, and *Robert B. Hemley* and *Johan W.E. Maitland* of *Gravel & Shea*, Burlington, for Plaintiff-Appellant.

*Glenn C. Howland* of *McKee, Giuliani & Cleveland, P.C.*, Montpelier, for Defendant-Appellee.

**Skoglund, J.** The Andrew C. and Margaret R. Sigler Foundation, Inc. (the "Foundation") is a § 501(c)(3) charitable foundation that operates the Dream & Do Farm (the "Farm"), a state-of-the-art dairy farm on 5.26 acres in Norwich, Vermont. It appeals from a superior court order denying its request for a property tax exemption pursuant to 32 V.S.A. § 3802(4). The trial court concluded that the Farm provided direct benefits to a "definite," rather than "indefinite," class of persons and, therefore, failed to meet the second prong of the three-part test in *American Museum of Fly Fishing, Inc. v. Town of Manchester*, 151 Vt. 103, 110, 557 A.2d 900, 904 (1989). Because we find that the Farm directly benefits an indefinite class of persons who are

part of the public, we reverse the trial court's order denying the Foundation tax exempt status. In so doing we also clarify proper application of this Court's prior precedent handed down in *New York Institute for Education of the Blind v. Town of Wolcott*, 128 Vt. 280, 286, 262 A.2d 451, 455 (1970), regarding a "definite" class of persons.

We exercise plenary review in determining whether the trial court's conclusions of law are consistent with applicable law. *Barrett/Canfield, LLC v. City of Rutland*, 171 Vt. 196, 198, 762 A.2d 823, 824 (2000). If consistent with applicable law, and if supported by findings of fact, we will uphold the court's conclusions. *Carpenter v. Central Vermont Med. Ctr.*, 170 Vt. 565, 566, 743 A.2d 592, 594 (1999) (mem.). In this case, the trial court's conclusions of law are not consistent with its findings of fact nor with applicable law.

The following trial court findings of fact are undisputed and will not be disturbed unless clearly erroneous. *In re M.B.*, 162 Vt. 229, 237-38, 647 A.2d 1001, 1006 (1994). The Foundation's mission is to encourage the preservation, survival and advancement of dairy farms in New England. As stated in its Articles of Association and By-Laws, the Foundation's specific goals are: to develop advanced farming techniques and improved dairy animals, to make available the benefits of advanced farming techniques to commercial dairy farmers and consumers, and to improve the economic performance of family run dairy farms and small producers. An additional goal of the Foundation is education, and to further that end the trial court found that the Foundation devotes "considerable time and resources to educate students at all levels." The following groups and individuals have received support and benefits from the Foundation: (1) local 4-H organizations and local schools; (2) agriculture students from regional universities and colleges who regularly visit and take courses at the Farm, and whose schools receive financial support from the Foundation; (3) dairy farmers who regularly visit the Farm and receive information about a wide variety of sound dairy farming practices; (4) scientists and researchers of agriculture technology who are provided access to the Farm and its resources to develop new technologies and procedures to assist small family farms; (5) students from nursery, elementary, and high schools who visit the Farm with their teachers to learn about dairy farming; (6) foreign exchange students who live and work at the Farm to learn about dairy farming and herd management so that they can return to their home countries with useful knowledge of modern farming techniques; (7) citizens of Norwich who benefit from having an operating dairy farm in town and

who benefit from the preservation of open and rural space, consistent with the Town's long-term planning mission; and (8) members of the general public who want to learn about dairy farming and those who benefit from the Foundation's commitment to preserving and assisting small dairy farms. The Farm has also given grants to one individual, colleges, universities and 4-H foundations, and has sponsored research on the sexing of embryos at the Farm. The Farm is open to the public and "[n]o one is required to complete an application, attend an interview, or be subject to any selection criteria or prerequisites" in order to visit the facilities. Additionally, the trial court found: "Aside from identifying broad categories of beneficiaries, the specific persons who receive benefits and support from the Foundation cannot be identified, determined, or defined."

The trial court further found that "[a] public policy of the State of Vermont is the preservation and survival of small dairy farms," and that the "Foundation's mission and work serves this public interest." Additionally, the court found that the state has a public interest in the education of Vermont farmers:

> The State has an interest in having local educational programs that permit agriculture students to receive quality education in Vermont. The Foundation's work in education serves these public interests ... [and the State's additional interest] is to educate persons without agriculture backgrounds about agriculture issues. Since agriculture generally, and dairy farming specifically, is important to Vermont, the State's interests are served by enhancing public awareness of agricultural matters. The Foundation's work with school children, pre-school children, and general members of the public serves this public interest.

The Foundation sought a declaration in the court below that the Dream & Do Farm was exempt from taxation under 32 V.S.A. § 3802(4) as real property "used for public, pious or charitable uses." We have previously outlined the controlling three-part test to determine when property is entitled to tax-exempt status as a "public use" under this statute:

> (1) the property must be dedicated unconditionally to public use; (2) the primary use must directly benefit an indefinite class of persons who are part of the public, and must also confer a benefit on society as a result of the benefit conferred

on the persons directly served; and (3) the property must be owned and operated on a not-for-profit basis.

*American Museum of Fly Fishing, Inc.*, 151 Vt. at 110, 557 A.2d at 904. Applying this test, the trial court found that the Farm met the first and third prongs of the test. The court further concluded that the property conferred a benefit on society, but that the Farm's primary uses of conducting educational classes, engaging in scientific research and dairy operations provided direct benefits to "definite classes of farmers, students, and researchers," and thus, it failed to satisfy the second prong of the test. In reaching this conclusion the court applied the definition of definite classes of persons laid out in *New York Institute*, 128 Vt. at 286, 262 A.2d at 455, and determined that the above beneficiaries are "definite" classes because they are groups determined by a process of choice or selection involving voluntary action or judgment on their part. This was error.

In *New York Institute*, we held that blind children were an indefinite class of persons and the institute which provided them remedial education, having met all other prerequisites, was tax exempt under § 3802(4). 128 Vt. at 287, 262 A.2d at 455. In rejecting the town's argument that blind children constituted a definite class of people so as to preclude a grant of tax exemption to the school, we observed that "class" is "a group determined by choice or selection and implies some kind of voluntary action or judgment," and rejected as "unrealistic" the argument that being blind places a person in a distinctive category or class of people under the law. *Id.* at 286-87, 262 A.2d at 455. The Court emphasized that the institute was a school for educating members of the public, "who because of blindness need specialized training." *Id.* at 287, 262 A.2d at 455.

In reaching this determination the Court distinguished the indefinite class of blind children from the definite class of Boy Scouts in *Fort Orange Council, Inc. v. French*, 119 Vt. 378, 125 A.2d 835 (1956), and the definite class of Peace Corps volunteers in *Experiment in International Living, Inc. v. Town of Brattleboro*, 127 Vt. 41, 238 A.2d 782 (1968), by pointing out that in those cases "the matter of membership in a particular group as a prerequisite to receiving the benefits of the property was an important, if not a deciding, factor in the decision of the court." *New York Inst.*, 128 Vt. at 287, 262 A.2d at 455. Further, the Court observed that in *Fort Orange* the use of the real estate was not extended to any groups other than Boy Scouts, thus resulting in "a closed circle to those outside the organization." *New York Inst.*, 128 Vt. at 286, 262 A.2d at 455. While the Court did

acknowledge that the institute was open to "blind children without restriction as to race, creed or any other limitation except for capacity of its facilities," *id.*, it appears that its decision was not based on any examination of the organization's nondiscriminatory process of selecting its beneficiaries. Instead, it appears that the Court's decision was based on the fact that blind children have exercised no choice, nor any kind of voluntary action, in becoming part of the class of blind children. This Court has since applied the definition of definite "class" of persons laid out in *New York Institute* to analyze the level of choice or selection undertaken by the beneficiaries themselves who take advantage of an organization's services.

For example, in *Kingsland Bay School, Inc. v. Town of Middlebury*, 153 Vt. 201, 203-06, 569 A.2d 496, 497-99 (1989), the Court found that a nonprofit corporation which operates a group home in Middlebury for teenagers experiencing social and emotional difficulties was tax exempt under § 3802(4). While we observed that the home provided its services without "any other limitation except for the capacity of its facilities," we ultimately applied the *New York Institute* definition of definite class of persons to examine the home's beneficiaries themselves and determined that because "troubled adolescents do not become residents of Kingsland as a result of any voluntary action or judgment on their part" they were an indefinite class of persons. *Id.* at 204, 569 A.2d at 498.

In contrast to the rationale underlying the Court's decisions above, we have also previously denied tax exempt status because an organization placed restrictions on access to the subject property which significantly limited any benefits derived from the use of the property by the public at large. For example, in *Vermont Wild Land Foundation v. Town of Pittsford*, 137 Vt. 439, 407 A.2d 174 (1979), we denied tax exempt status for a tract of undeveloped wilderness where the foundation in control of the land restricted access to a limited number of preapproved scientific researchers. Researchers and others interested in accessing the area were required to submit applications and attend interviews. Those deemed acceptable by the foundation were permitted to use the property. The foundation in that case argued that although the public at large was not permitted to use the property, it nonetheless benefitted from the fruit of the research performed on the land, and further benefitted from preservation of an undisturbed wilderness area. The issue of whether the beneficiaries constituted a definite or indefinite class of persons was not specifically raised, yet underlying our decision to deny tax exempt status was

commitment to the principle that limited use of land by a select group constituted a private, as opposed to general, or indefinite benefit. "It is not essential that every member of the community be actually served. But the benefits conferred must be upon the public at large, or an indefinite part of such public ... rather than a closed circle or group determined by choice or selection." *Vermont Wild Land Found.*, 137 Vt. at 443, 407 A.2d at 176-77 (internal quotation marks and citations omitted). It is not surprising that the court below followed our confused examples and evaluated the actions of the beneficiaries rather than those of the entity seeking the tax exempt status.

The legislative purpose of § 3802(4) is to "benefit the community as a whole by benefitting that indefinite part of the public served by public, pious, or charitable organizations." *Lincoln Street, Inc. v. Town of Springfield*, 159 Vt. 181, 185, 615 A.2d 1028, 1030 (1992). "It is fair to conclude, therefore, that the purpose of the statute is to free from taxation land that is being used to serve some public purpose." *Burr & Burton Seminary v. Town of Manchester*, 172 Vt. 433, 437, 782 A.2d 1149, 1152 (2001). The underlying principle behind the Court's definite/indefinite class distinction is the intent to distinguish uses that benefit the public from uses that benefit only a selected few. Public uses are characterized as such, in part because of the breadth and scope of the users who need not, as a prequisite to availing themselves of these uses, belong to any exclusive group. Private uses, on the other hand, are characterized by the benefits bestowed on a particular, and most often, limited sector of the public usually distinguishable by certain characteristics or membership. Beneficiaries of public uses are often incalculable and may be without definition or common characteristics. Private users are finite and limited. It is the inquiry into the character and quality of an organization's "choice," "selection," or "judgment" criteria used to determine its beneficiaries that informs the question of whether or not the organization's use of its property benefits an indefinite class that is part of the public and, thus, confers a benefit on society.

Proper application, therefore, of the oft-cited definition laid out in *New York Institute*, is to guide an inquiry into the character of the organization's decision-making criteria regarding its beneficiaries. The broader the scope of an organization's beneficiaries, and less restrictive its criteria, the greater the likelihood it is engaged in providing uses for an indefinite class of persons. Restricted and limited benefits may be enjoyed only by a limited number of persons. The level of selection or choice or voluntary action or judgment exercised by the

beneficiaries themselves is largely irrelevant. To illustrate, we have previously found use of land for a public park tax exempt as a public use without inquiring into the level of choice or selection or judgment exercised by park visitors. See *Middlebury College v. Town of Hancock*, 115 Vt. 157, 164, 55 A.2d 194, 198 (1947).

The trial court findings in this case clearly demonstrate that the Dream & Do's beneficiaries are numerous and varied — ranging from school children on field trips to visiting scientists researching embryo sexing. The trial court explicitly observed that "aside from identifying broad categories of beneficiaries, the specific persons who receive benefits and support from the Foundation cannot be identified, determined, or defined." Appellee urges the Court to find persuasive the fact that the majority of individuals who partake of the Farm's services do so through an exercise of individual choice, and that many of the students who come to the Farm do so in conjunction with a college or university program which has further subjected them to that program's own selection process. To characterize the Farm's beneficiaries as "definite" due only to the fact that there is some indicia of selectivity at the front end of the process which has led a person to the Farm is an absurd result. While the bulk of the Farm's beneficiaries can be identified as persons interested in dairy farming and related practices, the Farm is open to the public at large and has never turned anyone away. Proper application of our precedent requires a conclusion that the Foundation's use of the property benefits an indefinite class of persons. The Dream & Do Farm is therefore tax exempt under § 3802(4).

*Reversed and remanded for entry of judgment that plaintiff foundation is exempt from payment of property taxes under 32 V.S.A. § 3802(4).*