27 A.3d 312 (2011)
2011 VT 65
MOUNTAIN VIEW COMMUNITY SCHOOL, INC.
v.
CITY OF RUTLAND.
No. 10-086.
Supreme Court of Vermont.
June 23, 2011.
Theodore F. Robare of Theodore F. Robare, P.C., Rutland, for Plaintiff-Appellant.
Andrew Costello, Office of the City Attorney, Rutland, for Defendant-Appellee.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
BURGESS, J.
¶ 1. Mountain View Community School, Inc. appeals from a trial court order rejecting its request for a property tax exemption for "lands owned or leased by colleges, academies or other public schools" under 32 V.S.A. § 3802(4). Mountain View contends the court misinterpreted the law in denying the requested exemption. We agree and reverse.
*313 ¶ 2. The undisputed facts may be summarized as follows. Mountain View is a Vermont nonprofit corporation organized for educational purposes, as well as a § 501(c)(3) nonprofit corporation under the Internal Revenue Code. It is licensed as an independent school by the Vermont Department of Education, under 16 V.S.A. § 166, to provide elementary education. For a number of years, Mountain View operated a private nonsectarian school for students from preschool through eighth grade at two separate locations in the City of Rutland. Mountain View's only use of the properties was as a school.
¶ 3. While maintaining that it was statutorily exempt from the payment of property taxes, Mountain View nevertheless paid themalbeit under protestfrom its inception in 1994 through 2007. When the school's assessed value increased dramatically in 2006 and 2007, however, it sought an exemption as a "college, academy, or other public school" under 32 V.S.A. § 3802(4).[1] The City declined to grant the exemption, and Mountain View, in response, filed suit for declaratory relief and an injunction to prevent a threatened tax sale.
¶ 4. The motion for preliminary injunction was heard in October 2008. Mountain View presented the testimony of one witness, a member of the school's board of trustees, who described the school's history, mission, and admissions process. She explained that the school provided individualized instruction which "cater[ed] to children who need a different learning environment." While it sought children who would be a good "fit" for the school, she denied that it would refuse admittance to any member of the public. She acknowledged that the school charged tuition, but also observed that it offered scholarships to needy students, and noted that in past years a number of towns in Rutland County had tuitioned public-school students to Mountain View. Following the hearing, the court issued a brief order, finding that Mountain View had presented "a colorable case" for a tax exemption and would suffer irreparable harm if the tax sale went forward. Accordingly, the court granted the motion for preliminary injunction and stayed the sale pending completion of the action.
¶ 5. A one-day bench trial before a different judge was held in October 2009. Mountain View presented no testimony and only limited additional evidence, including the school's 2007-2008 "Handbook," and referred the court to the evidence adduced at the earlier hearing in support of the motion for preliminary injunction. Mountain View argued that it qualified as a "public school" under the provision in 32 V.S.A. § 3802(4) exempting "lands owned or leased by colleges, academies or other public schools." The City opposed the claim, asserting that Mountain View failed to meet the test for determining whether property is dedicated to a "public use" under the separate provision of § 3802(4) exempting real estate "sequestered or used for public, pious or charitable uses."
¶ 6. That test, as this Court recently explained in Vermont Studio Center, Inc. v. Town of Johnson, requires the taxpayer to show that the property is dedicated *314 to a public use, that it directly benefits "an indefinite class of persons who are part of the public," and that it "confer[s] a benefit on society as a result of the benefit conferred on the persons directly served." 2010 VT 59, ¶ 3, 188 Vt. 223, 5 A.3d 904 (quotations omitted). Elaborating on the "indefinite class" criterion, we have held that it is "the character and quality of an organization's `choice,' `selection,' or `judgment' criteria used to determine its beneficiaries that informs the question of whether or not the organization's use of its property benefits an indefinite class that is part of the public and, thus, confers a benefit on society." Sigler Foundation v. Town of Norwich, 174 Vt. 129, 134, 807 A.2d 442, 447 (2002).
¶ 7. The trial court issued a written ruling in January 2010, denying the exemption. The court agreed with the City's analysis and concluded that Mountain View had failed to show that it directly benefited "an indefinite class of persons who are part of the public." The court found that the only evidence Mountain View offered in this regard was the information in its handbook concerning the school's admissions process. The handbook described a "mutual process" in which an applicant's parents, teachers and the school "work together ... to make the final decision with regard to the acceptance of children into the program." The court characterized the handbook description as "vague" and noted that Mountain View had provided no additional testimony "to clarify the process." Nor had it presented evidence concerning the number of students the school had accepted or rejected over the years. In short, the court found that Mountain View had adduced no evidence as to "the character and quality of the `choice,' `selection,' or `judgment' criteria" used to determine its "beneficiaries," i.e., students, and thus concluded that it had failed to carry its burden of demonstrating that it was entitled to the claimed exemption. This appeal followed.
¶ 8. The meaning and scope of the tax exemptions set forth in 32 V.S.A. § 3802(4) plainly control the disposition of this appeal, and as such our review is plenary and de novo. See Kwon v. Eaton, 2010 VT 73, ¶ 13, ___ Vt. ___, 8 A.3d 1043 (mem.) (stating that questions involving statutory construction involve matters of law which we review de novo). Although cited by neither the parties nor the trial court below, our decision in Willard v. Pike nearly 125 years ago remains the seminal and controlling authority governing the exemption for property "owned or leased by colleges, academies or other public schools." 59 Vt. 202, 9 A. 907 (1887). The question in Willard was whether several buildings owned by the St. Johnsbury Academy and used by students and faculty for lodging and dining purposes were exempt from taxation. The Academy, then as now a private corporation organized and operated for educational purposes with private tuition-paying students, relied on the identical exemption at issue here for "lands owned or leased by colleges, academies, or other public schools."
¶ 9. In opposing the claimed exemption, the Town of St. Johnsbury asserted that the phrase "or other public schools" was designed to modify the preceding "academies" and "colleges" so as to restrict the exemption to those academies and colleges that were "public" in the sense of being open to all students at public expense. Because the Academy was "purely a private one" that could accept or reject any pupil and where "the scholars pay tuition" the Town maintained that it failed to qualify as a "public school" under the statute.
*315 Id. at 204, 9 A. at 908.[2] The Court flatly rejected this interpretation of the statute. As it explained:
Colleges and academies are, in popular understanding, public institutions, although not public in the sense as applied in our common schools, which are supported by public taxation and are free to the public without charge to the pupils.
The word "public" in this statute, we hold, is not to be construed in the latter sense, but in the sense in which academies are regarded as public institutions.
Id. at 216, 9 A. at 915. In other words, the Court continued, the word "public" in the phrase "public schools" is "not restrictive of what precedes, but is explained thereby; that is, public in the sense in which colleges and academies are public." Id. (emphasis added). "Public" in this sense, the Court observed, meant an institution "incorporated wholly for the purposes of general education" and operated "without any ... purpose of profit" where "tuition is charged only for its maintenance." Id. Again it meant, in the Court's view, an institution operated "without personal advantage or profit to the corporators, except as they share with the whole public in the general advantage by promotion of education and good morals." Id. at 217, 9 A. at 915. The Court thus concluded that the Academy qualified as a public school within the meaning of the statutory exemption.
¶ 10. In an equally important addendum, the Willard Court went on to hold that, although the statute speaks in terms of lands "owned" by a college, academy or other public school, the Legislature did not intend to exempt property "simply because owned" by such an institution. Id. at 218, 9 A. at 916. Rather, the exemption extended only to property owned by the school and dedicated to the "use and benefit of the institution as an academy or a college in carrying out the purposes of its incorporation." Id. Applying this construction, the Court had little difficulty holding that the buildings in question were employed "for actual use and convenience of the academy in carrying on" the educational functions of the school and were therefore entitled to a tax exemption. Id. at 219, 9 A. at 916.
¶ 11. We have consistently reaffirmed and applied Willard over the decades. Scott v. St. Johnsbury Academy, for example, involved several additional buildings on the campus of the same Academy which, once again, were held to be exempt from taxation by virtue of being owned by a public school and used for the "benefit of the institution as an academy." 86 Vt. 172, 174, 84 A. 567, 567 (1912). Troy Conference Academy v. Town of Poultney concerned a private nonprofit junior college seeking an exemption for faculty housing under the same statutory provision, but with an additional wrinkle arising from a 1941 amendment providing that real property thereafter acquired by "any college, university or fraternity" otherwise exempt from taxation would nevertheless be set in *316 the grand list unless specifically exempted by a town vote. 115 Vt. 480, 484, 66 A.2d 2, 5 (1949) (quotation omitted). The Court held that although the building in question was otherwise exempt as a public school under Willard, it was nevertheless a "college" subject to taxation under the 1941 amendment. Id. at 485-86, 66 A.2d at 10.
¶ 12. Stowe Preparatory School, Inc. v. Town of Stowe reached the opposite result on the effect of the amendment, but the same conclusion on the applicability of the "public school" exception. 124 Vt. 392, 205 A.2d 544 (1964). In Stowe Preparatory, the private, nonprofit college preparatory school was determined not to be a "college" subject to taxation within the meaning of the 1941 amendment. "[O]n the contrary," the private preparatory school was held to be a public school and "exempt from taxation by virtue of ... 32 V.S.A. § 3802(4)." Id. at 396, 205 A.2d at 546-47.
¶ 13. Several more recent decisions are noteworthy not only for reaffirming the meaning of "public school" as announced in Willard but also for making it plain that this exemption is separate and independent from the exemption in the same statute for "public, pious or charitable" uses. In Experiment in International Living, Inc. v. Town of Brattleboro, the plaintiff, a nonprofit organization dedicated to promoting international understanding, claimed an exemption for its School for International Training located in the Town of Brattleboro. 127 Vt. 41, 238 A.2d 782 (1968), overruled on other grounds by Am. Museum of Fly Fishing, Inc. v. Town of Manchester, 151 Vt. 103, 557 A.2d 900 (1989). The Court held, under a test later modified in Sigler, that use of the property principally by Peace Corps volunteers was "not for the benefit of an indefinite part of the public" and thus did not satisfy the exemption for "public, pious or charitable" uses. Id. at 48, 238 A.2d at 787. Turning, however, to the school's corollary claim that it was entitled to the exemption for "lands owned or leased by colleges, academies or other public schools," the Court observed that the only salient issue in this regard was "whether the use of Experiment's real estate in Brattleboro is that of a college" requiring a vote of the electorate to qualify for the exemption under the earlier-mentioned 1941 amendment, "or if such use is for a public school and therefore exempt from taxation." Id. at 51, 238 A.2d at 788. Based on "the ages of the participants" and the educational programs offered by the school, the Experiment was determined to be the equivalent of a college and therefore not exempt. Id.
¶ 14. Conversely, in New York Institute for Education of the Blind v. Town of Wolcott, plaintiff's camp school was deemed to serve an indefinite class of persons, albeit comprised of the involuntarily impaired, and therefore qualified as a "public use" under the exemption for "public, pious or charitable uses." 128 Vt. 280, 287, 262 A.2d 451, 455 (1970). The "public school" exception was raised but not addressed, the Court observing that once "public use" was settled it was "unnecessary to consider the question raised by the plaintiff of whether the Institute is a public school within the meaning of 32 V.S.A. § 3802(4) and, therefore, exempt for this additional reason." Id. at 288, 262 A.2d at 456.
¶ 15. Any doubt as to the independent basis of the exemption for property owned by "colleges, academies or other public schools" was put to rest in Town of Williston v. Pine Ridge School, Inc., which held that the defendant, a private, tuition-paying school catering to students with learning disabilities, was a "public school" as defined in Willard and its progeny and therefore tax exempt. 132 Vt. 439, 443, 321 A.2d 24, 27 (1974). Although the *317 school also claimed to be exempt as a "public, pious or charitable" use, we found the argument to be superfluous in light of our holding that it qualified as a public school, explaining: "As we hold that the property involved is exempt because owned by a public school for educational purposes under § 3802(4), we need not discuss the `public use' issue. The various clauses of § 3802(4) are disjunctive, not conjunctive." Id. at 444, 321 A.2d at 28 (emphasis added).
¶ 16. Although the foregoing authorities confirm the independent nature and scope of the "public school" exemption of § 3802(4), two more recent decisions are also worth noting. In Berkshire School v. Town of Reading the question was whether land owned in Vermont by the plaintiff, a private high school located in Massachusetts, was entitled to the exemption for "lands owned or leased by colleges, academies or other public schools" under 32 V.S.A. § 3802(4). 172 Vt. 440, 781 A.2d 282 (2001). Assuming that it otherwise qualified as a "public school," the only question was whether the plaintiff employed the precise land at issue for educational purposes. Observing that the property in question was "simply a plot of land that is not being used at all, let alone for any educational purposes," it was held not exempt. Id. at 442-43, 781 A.2d at 284.
¶ 17. Berkshire referenced Burr & Burton Seminary v. Town of Manchester, 172 Vt. 433, 782 A.2d 1149 (2001), a companion case issued on the same date and dealing with the same issue. The question there was whether two properties owned by the plaintiff, "a private high school in Manchester," qualified under the exemption for "colleges, academies and other public schools" and more specifically whether the school was required to demonstrate that they were used for educational purposes. Id. at 434-35, 782 A.2d at 1151. Reviewing the history of the exemption since Willard, we reaffirmed our holding there that "the school must use its property for an educational purpose, in addition to own it, in order to claim the exemption." Id. at 439, 782 A.2d at 1154. Under this test, the headmaster's house qualified for the exemption, but a converted dormitory used for commercial rental purposes did not. Id. Although the school also claimed that the former dormitory was exempt under the provision for "public, pious or charitable" uses, we declined to address the issue because it had not been raised below and preserved for review on appeal. Id. at 440, 782 A.2d at 1155.
¶ 18. In light of the foregoing authorities, the trial court's error here is readily apparent; the court mistakenly conflated the "public use" and "public school" exemptions, seeking to determine whether the school served "an indefinite class" under the former when, in fact, Mountain View was relying on the latter. As we observed in Pine Ridge, the "various clauses of § 3802(4) are disjunctive, not conjunctive," 132 Vt. at 444, 321 A.2d at 28, and Mountain View was not required to satisfy the criteria for the "public, pious or charitable" use exemption in seeking an exemption for land owned by a "college, academy or other public school." Alternatively, however, Mountain View was required to show that it meets the broad definition of a public school articulated in Willard and applied by this Court to a variety of selective, nonprofit private schools, and that the specific property in question was actually used for educational purposes. Burr & Burton, 172 Vt. at 439, 782 A.2d at 1154.
¶ 19. The record reveals no basis of dispute on these points. The Town here conceded that Mountain View owned the properties in question, that it was a nonprofit *318 corporation organized and operated solely for educational purposes, that it was licensed by the state as an independent elementary school, and that the properties in question were at all relevant times employed for "the appropriate use and benefit of the school." Thus, there is no doubt that Mountain View qualified for the exemption for lands "owned by colleges, academies or other public schools" under 32 V.S.A. § 3802(4), and that the trial court erred in concluding otherwise. Our conclusion renders it unnecessary to reach Mountain View's additional claims.
Reversed.
NOTES
[1] This section, in pertinent part, provides:

The following property shall be exempt from taxation:
....
(4) Real and personal estate granted, sequestered or used for public, pious or charitable uses; ... and lands owned or leased by colleges, academies or other public schools ....
32 V.S.A. § 3802(4).
[2] Although then, as now, towns were authorized to tuition students to local private academies, it is unclear whether or to what extent this was actually occurring at the time of the decision in Willard. See Laws of Vermont, 1869, No. 9, § 1 (providing that "any school district in this State, in which any academy is located ... is hereby authorized ... to make any arrangement or agreement with officers of said academy, to instruct in said academy all or part of the scholars belonging to such district"). The Willard decision does not mention or rely on the statute or the possible presence of such students at the school, but rather assumes that, as the Town asserted, it was private in nature. See Willard, 59 Vt. at 216, 9 A. at 915 (noting that "[n]o colleges or academies in this state are yet free to the public like our public schools").