NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 12

No. 2016-194

| | |
|---|---|
| Vermont College of Fine Arts | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| City of Montpelier | October Term, 2016 |

Timothy B. Tomasi, J.

Barney L. Brannen of Brannen & Loftus, PLLC, Hanover, New Hampshire, for
  Plaintiff-Appellant.

Robert E. Fletcher and Eric G. Derry of Stitzel, Page & Fletcher, P.C., Burlington, for
  Defendant-Appellee.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1. **REIBER, C.J.** This case concerns the taxable status of Schulmaier Hall, a building owned by the Vermont College of Fine Arts (VCFA), two-thirds of which VCFA rented to agencies of the State of Vermont (State) during the 2013 and 2014 tax years. The City Assessor of the City of Montpelier (City) found the property nonexempt for those tax years. In response, VCFA brought a motion for declaratory judgment in the trial court, and both parties moved for summary judgment. Granting summary judgment for the City, the court found not only (1) that VCFA had failed to exhaust its administrative remedies before moving for declaratory judgment but also (2) that the property was not exempt on the merits. We affirm.

¶ 2.    The facts are undisputed.  VCFA is a nonprofit corporation that was formed in February 2007.  In June 2008, VCFA purchased the programs and property of Vermont College from Union Institute and University, consisting of several buildings and roughly thirty-one acres located within the City.  One of these buildings—Schulmaier Hall—is the subject of the present dispute.  Located at the southeast corner of the VCFA campus, Schulmaier Hall is a two-story building with classrooms and faculty lounges.  It also has a basement and an unused attic.

¶ 3.    VCFA provides low-residency graduate degree programs in fine arts and describes itself as having a "mission as a national center for education in the arts."  These low-residency programs require VCFA's students to reside on campus twice each year for between seven and ten days.  As a result of this model, VCFA did not use the majority of the campus for its own operations in the 2013-2014 tax years, leaving up to sixty-two percent of the built space open for lease.  VCFA's operations include a "Leasing Strategy," and VCFA's finance plan includes rental income as a component of revenue from operations, with a revenue stream as high as $2.8 million in 2012-2013.  This strategy for campus management predates VCFA; VCFA's purchase of Vermont College property also included eleven existing leases to third-party tenants.

¶ 4.    As part of its leasing plan, VCFA negotiated terms with the State's Department of Buildings and General Services and, in August 2012, leased the first and second floors of Schulmaier Hall to the State.  Combined, these floors are roughly 22,300 square feet, which is two-thirds of the usable space in the building.  The lease had an initial term of two years and provided the State with an option to renew the lease for an additional two years.  The space was leased at the rate of $17.80/square foot for the first year and $18.16/square foot for the second year—an annual rent of approximately $400,000.  The State was using the leased portion of property during the 2013 and 2014 tax years; VCFA used a portion of the basement to house electronic communications and switching equipment for the campus and for storage during that time.

¶ 5.     On June 12, 2013, the City's Assessor sent a Notice of Change in Appraisal of Real Estate to VCFA, stating that Schulmaier Hall is "now taxable." Five days before, the City Manager had sent an email to VCFA's president, advising him of the forthcoming change and giving the dates for the process for grieving the decision to the City's Board of Civil Authority (BCA). In the email, he stated that "[t]echnically, tax exempt status cannot be grieved but practically we would have until, say, July 1 to reach an accommodation if possible." VCFA did not grieve the City Assessor's decision to the BCA, but instead initiated an action in superior court by filing a Complaint for Declaratory Judgment on September 13, 2013. Since then, VCFA has made tax payments to the City under protest. In 2014, the State terminated its lease with VCFA.

¶ 6.     After VCFA filed its motion for declaratory judgment, both parties moved for summary judgment. VCFA argued that Schulmaier Hall qualified for a tax exemption under the "public schools" clause of 32 V.S.A. § 3802(4) or, in the alternative, under the "public use" clause of the same statute. The City argued that VCFA had not exhausted its administrative remedies before moving for declaratory judgment and that neither exemption was appropriate. The court concluded that the precedent on exhaustion was mixed and continued to the merits, granting the City's motion, denying VCFA's, and finding that Schulmaier Hall was leased for "general commercial purposes" and was not exempt under either clause of § 3802(4).

¶ 7.     We review a trial court's decision on cross-motions for summary judgment de novo, applying the same standard of review as applied below. Inkel v. Pride Chevrolet-Pontiac, Inc., 2008 VT 6, ¶ 8, 183 Vt. 144, 945 A.2d 855. "Summary judgment is appropriate only when the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law." Dulude v. Fletcher Allen Health Care, Inc., 174 Vt. 74, 79, 807 A.2d 390, 395 (2002). As with any motion for summary judgment, "the nonmoving party receives the benefit of all reasonable doubts and inferences." Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356, 848 A.2d 310 (citing Samplid Enters., Inc. v. First Vt. Bank, 165 Vt. 22, 25,

3

676 A.2d 774, 776 (1996)). When, as here, "there are cross-motions for summary judgment, both parties are entitled to the benefit of all reasonable doubts and inferences" when being considered as the non-moving party. Montgomery v. Devoid, 2006 VT 127, ¶ 9, 181 Vt. 154, 915 A.2d 270 (quotation omitted).

¶ 8. On appeal, VCFA argues that Schulmaier Hall qualifies for a tax exemption under the "public schools" clause of § 3802(4) or, in the alternative, under the "public use" clause of the same statute. 32 V.S.A. § 3802(4) (exempting from taxation, inter alia, "[r]eal and personal estate granted, sequestered or used for public, pious or charitable uses" and "lands owned or leased by colleges, academies, or other public schools"). The City first responds that we should not reach the merits of the case because VCFA had not exhausted its administrative remedies before moving for declaratory judgment. It next responds that if we do reach the merits, neither exemption is appropriate and VCFA may not apply for multiple exemptions under § 3802(4). We conclude that VCFA should have exhausted its administrative remedies, but we reach the merits here in recognition of our own inconsistent precedent regarding exhaustion in the specific case of § 3802(4). On the merits, we conclude that VCFA may apply for multiple exemptions under § 3802(4), but that neither the "public schools" exemption nor the "public use" exemption is appropriate here. We therefore affirm.

I.

¶ 9. We first consider whether VCFA had to exhaust its administrative remedies before bringing its motion for declaratory judgment. Specifically, the City argues that the court lacked subject matter jurisdiction to reach the merits of this case because VCFA was required to exhaust its administrative remedies by first grieving the City Assessor's decision to the BCA, and VCFA failed to satisfy this requirement. VCFA responds that the BCA does not have the authority to rule on questions of tax-exempt status, and that consequently grieving a decision of tax-exempt status to the BCA would be futile. We hold that the BCA does have authority to rule on questions of

4

tax-exempt status and that VCFA should have exhausted its administrative remedies before bringing its motion for declaratory judgment.

¶ 10.    The process of determining the taxable status of property starts with assembling the "grand list" of a town:

> When completed, the grand list of a town shall be in such form as the Director prescribes and shall contain such information as the Director prescribes, including:
>
>> (1) In alphabetical order, the name of each real property owner and each owner of taxable personal property;
>>
>> . . .
>>
>> (6) For those parcels which are exempt, the insurance replacement value reported to the local assessing officials by the owner under section 3802a of this title.

32 V.S.A. § 4152(a).  This indicates that the listers of a town or city—here, the City Assessor—have the responsibility to determine whether a property is taxable or exempt, because they must list the exempt parcels in the grand list.  However, a property owner may challenge the decision of the listers on any matter, including the tax-exempt status of the property: "[T]he listers shall meet . . . and on that day and from day to day thereafter shall hear persons aggrieved by their appraisals or by any of their acts until all questions and objections are heard and decided."  Id. § 4221.

¶ 11.    Likewise, there is a procedure outlined for disputes from the listers' decision: "[W]ithin 14 days after the date of notice thereof a person aggrieved by the final decision of the listers under the provisions of section 4221 of this title, may appeal in writing therefrom to the board of civil authority."  Id. § 4404(a).  This process matches the timetable for grieving the City Assessor's decision laid out in the City Manager's email to the VCFA president.  VCFA contends that the BCA's statutory authority is limited to appraisal value, but 32 V.S.A. § 4404(c) notes that the BCA "thereafter shall hear and determine such appeals until all questions and objections are heard and decided."  (Emphasis added.)  It is only after the BCA has ruled on a grievance that the

5

statutory scheme calls for appeal to the court: "A taxpayer or the Selectboard members of a town aggrieved by a decision of the board of civil authority . . . may appeal the decision of the board to either the Director or the Superior Court of the county in which the property is located." Id. § 4461(a).

¶ 12. Understanding this statutory scheme is important to this case because "[a] party's failure to exhaust administrative remedies permits a court to dismiss the action for lack of subject matter jurisdiction." Jordan v. State Agency of Transp., 166 Vt. 509, 511, 702 A.2d 58, 60 (1997). Further, "this Court has consistently held that when administrative remedies are established by statute or regulation, a party must pursue, or 'exhaust,' all such remedies before turning to the courts for relief." Id. This rule "serves the dual purposes of protecting the authority of the administrative agency and promoting judicial efficiency." Id. Moreover, even if the administrative body did not have the authority to settle the issue before it, doing so would aid the "development of the record according to the more informal procedures of the administrative procedure act and fact-finding." Stone v. Errecart, 165 Vt. 1, 5, 675 A.2d 1322, 1325 (1996).

¶ 13. Nevertheless, we address the merits in this case because our own jurisprudence regarding exhaustion of administrative remedies in the specific case of challenging the determination of tax exempt status under § 3802(4) has been inconsistent. This inconsistency has occurred because we have heard many § 3802(4) cases in which the parties appealed to the BCA before arguing their cases in superior court, but we have also heard several cases in which the parties did not appeal to the BCA before arguing their cases in superior court. Compare Brownington Ctr. Church of Brownington, Vt., Inc. v. Town of Irasburg, 2013 VT 99, ¶¶ 5-6, 195 Vt. 196, 87 A.3d 502 (noting that party appealed to the BCA); Vt. Studio Ctr., Inc. v. Town of Johnson, 2010 VT 59, ¶ 3, 188 Vt. 223, 5 A.3d 904 (same); Am. Museum of Fly Fishing v. Town of Manchester, 151 Vt. 103, 103, 557 A.2d 900, 901 (1989) (same); and Broughton v. Town of Charlotte, 134 Vt. 270, 271, 356 A.2d 520, 521 (1976) (same) (overruled on other grounds by Am.

6

Museum of Fly Fishing, 151 Vt. 103, 557 A.2d 900), with Mountain View Cmty. School, Inc. v. City of Rutland, 2011 VT 65, ¶ 3, 190 Vt. 122, 27 A.3d 312 (noting that party did not appeal to BCA); and Lincoln St., Inc. v. Town of Springfield, 159 Vt. 181, 183, 615 A.2d 1028, 1029 (1992) (same); and Kingsland Bay School v. Town of Middlebury, 153 Vt. 201, 202, 569 A.2d 496, 497 (1989) (same).

II.

¶ 14.    We next address whether VCFA may apply for exemption under multiple clauses of § 3802(4).  The City argues that VCFA may not even pursue the "public use" exemption of § 3802(4) because—as an educational institution—it may pursue only a more specific provision for schools and colleges, the "public schools" exemption.  To support this position, the City points to Town of Sheldon v. Sheldon Poor House Assn, in which we concluded that the Legislature had specifically created an exemption for lands and buildings used for the support of the poor, so a "poor house" could not also be covered by a separate, more general exemption for " 'real [] estate granted, sequestered or used for public, pious or charitable uses.' "  100 Vt. 122, 128, 135 A. 492, 494 (1927) (quoting 1906 V.S.A. § 362).

¶ 15.    However, the City's argument is out of step with more recent opinions of this Court in which we have specifically noted that "[t]he various clauses of § 3802(4) are disjunctive, not conjunctive."  Town of Williston v. Pine Ridge Sch., Inc., 132 Vt. 439, 444, 321 A.2d 24, 28 (1974).  In New York Institute for the Education of the Blind v. Town of Wolcott, we considered this question in reverse and noted that "[i]n view of our holding [that the public use exemption applies] it is unnecessary to consider the question raised by the plaintiff of whether the Institute is a public school within the meaning of 32 V.S.A. § 3802(4) and, therefore, exempt for this additional reason."  128 Vt. 280, 288, 262 A.2d 451, 456 (1970) (emphasis added).  Most recently, we spoke conclusively on the matter, determining that "[t]his [public schools] exemption is separate and independent from the exemption in the same statute for 'public, pious, or charitable'

7

uses." Mountain View Cmty. Sch., 2011 VT 65, ¶ 13.  Therefore, VCFA may apply for exemption from taxation under multiple clauses of § 3802(4).

III.

¶ 16.  We next address VCFA's argument that the court erred by finding that Schulmaier Hall did not qualify for the "public schools" exemption of 32 V.S.A. § 3802(4).  That exemption excepts "lands owned or leased by colleges, academies, or other public schools" from taxation, provided that such lands are not "rented for general commercial purposes."  32 V.S.A. § 3802(4).  Pointing to our decision in Burr & Burton Seminary v. Town of Manchester, 172 Vt. 433, 782 A.2d 1149 (2001), the court determined that VCFA's lease to the State was for "general commercial purposes," so VCFA did not qualify for a tax exemption.  VCFA appeals, arguing that Burr & Burton should not be followed.

¶ 17.  Tax exemptions are the exception, not the rule, and are granted only "for the performance of service essentially public in nature on the theory that such service benefits the public generally and, in so doing, assumes a share of the public burden."  English Language Ctr., Inc. v. Town of Wallingford, 132 Vt. 327, 329-30, 318 A.2d 180, 182 (1974).  However, the restriction on exemptions must not be unreasonable and "must not 'defeat the purpose of the statute.'"  Delta Psi Fraternity v. City of Burlington, 2008 VT 129, ¶ 14, 185 Vt. 129, 969 A.2d 54 (quoting Troy Conference Acad. v. Town of Poultney, 115 Vt. 480, 486, 66 A.2d 2, 6 (1949)).  When dealing with challenges to a lister's decision regarding taxable status, "[t]he burden is on the person claiming the benefit of the exemption, and the exemption statute must be strictly construed against that person."  Brownington Ctr. Church, 2013 VT 99, ¶ 9.

¶ 18.  Because VCFA rented only two floors of Schulmaier Hall to the State, not the whole building, we agree with the trial court that there is some support for the proposition that the building could be divided by function for determining tax exempt status.  See, e.g., Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica, 2005 VT 16, ¶ 35, 178 Vt. 35, 869 A.2d 145;

8

Governor Clinton Council, Inc. v. Koslowski, 137 Vt. 240, 246, 403 A.2d 689, 693 (1979); Med. Ctr. Hosp. of Vt., Inc. v. City of Burlington, 131 Vt. 196, 199, 303 A.2d 468, 471 (1973). However, because neither party has advanced this view or briefed this issue—indeed, both parties specifically declined to pursue this route—we do not consider it. We therefore determine the tax-exempt status of the entire building.

¶ 19. Similar to tax exemptions generally, we have previously decided that "the purpose of [the 'public schools' exemption] is to free from taxation land that is being used to serve some public purpose." Burr & Burton, 172 Vt. at 437, 782 A.2d at 1152. We noted that "[i]f there is no educational use to the land, there is no benefit to the state, and, consequently, no reason why the Legislature would forgo the benefit of taxation for this land." Id.

¶ 20. VCFA correctly points out that in the cases of Willard v. Pike, 59 Vt. 202, 218, 9 A. 907, 916 (1887), and Scott v. St. Johnsbury Academy, 86 Vt. 172, 174, 84 A. 567, 568 (1912), we determined that educational use, not only the ownership of the property, is a central issue when determining taxable status under the "public schools" clause of § 3802(4). In fact, in Scott, we went so far as to conclude that a school could use a building "as a safe and steady revenue producer, as a municipal or government bond might be" and still claim an exemption for educational use as long as the school did not purchase the property for "speculative purposes." 86 Vt. at 174, 84 A. at 568. However, as the trial court decision noted, the Legislature amended the "public schools" exemption in 1911—twenty-four years after Willard, and while Scott was pending—specifically to exclude "general commercial purposes," even going so far as to note that the new exclusion did not apply to "so-called school or college lands, sequestered to such use prior to January 28, 1911." 32 V.S.A. § 3802(4). Therefore, the law has changed since we decided Willard and Scott.

¶ 21. In fact, in Scott itself we distinctly recognized the change in the law and its effect, even though the law had taken effect only after the events of the case, observing that "[i]t is to be presumed that in enacting it the Legislature acted with full knowledge of the prior legislation on

9

the subject, and its construction by the courts, and that it intended to make some change in the existing law. The change here intended was obviously the removal of an existing exemption." 86 Vt. at 175, 84 A. at 568 (citations omitted). Likewise, we noted the statutory change thirty-eight years after it happened, noting that "[b]efore the enactment of No. 33 of the Acts of 1910 lands owned by a college were exempt from taxation, although held as an investment and rented for purposes not directly connected with the running of the institution." Troy Conference Acad., 115 Vt. at 485-86, 66 A.2d at 6 (1949) (emphasis added).

¶ 22. VCFA contends that Willard is still the central authority regarding the "public schools" exemption. VCFA points to our decision in Mountain View Community School, in which we determined that "our decision in Willard v. Pike nearly 125 years ago remains the seminal and controlling authority governing the exemption for property 'owned or leased by colleges, academies or other public schools.' " 2011 VT 65, ¶ 8. However, VCFA fails to note that the central issue in Mountain View Community School was the definition of "public school," which we defined in Willard and which definition remains unimpacted by the 1911 amendment to exclude "general commercial purposes." Id. ¶ 9; Willard, 59 Vt. at 216, 9 A. at 915.

¶ 23. We have previously determined that it is the primary function of the property—here, as conceded by both parties its use by the State—and not some secondary function that determines the property's taxable status. Further, "[t]he governing consideration is the direct and immediate benefit derived from the use of the property, rather than the remote or incidental benefit produced by its primary function." Shelburne Museum, Inc. v. Town of Shelburne, 129 Vt. 341, 344, 278 A.2d 719, 721 (1971).

¶ 24. In Burr & Burton, we addressed a situation similar to this one in that the primary use of the property at issue—in that case, a dormitory—was "to derive a cash flow from the building." 172 Vt. at 439, 782 A.2d at 1154. We concluded that "[t]his use is the definition of rental for a general commercial purpose." Id. We reasoned that "[i]f land used for a commercial

10

purpose is not exempt, the Legislature could not have intended that other noneducational uses of the property, including no use at all, would qualify the land for the exemption." Id.

¶ 25. VCFA argues that the entirety of Schulmaier Hall has been used for educational purposes for over one hundred years and that it may be used for educational purposes again in the future. However, we have determined that once an owner ceases to use the property for an exempt purpose, it is no longer entitled to the tax exemption, regardless of the past use of the property. Id. Future use is likewise unavailing; the relevant test is based on the use of the property during the tax years in question. Appraisals occur on an annual basis, and "[a]t such time that the school actually begins to use the property [for educational purposes], the issue of exemption may be raised again at the next appraisal." Berkshire Sch. v. Town of Reading, 172 Vt. 440, 443, 781 A.2d 282, 284 (2001). Schulmaier Hall does not qualify for the "public schools" exemption of 32 V.S.A. § 3802(4).

IV.

¶ 26. We finally address VCFA's argument that the court erred by finding that Schulmaier Hall did not qualify for the "public use" exemption of 32 V.S.A. § 3802(4). This exemption covers "real and personal estate granted, sequestered, or used for public, pious or charitable uses." 32 V.S.A. § 3802(4). The purpose of this exemption "is to benefit the community as a whole by benefiting that indefinite part of the public served by public, pious, or charitable organizations." Lincoln St., Inc., 159 Vt. at 185, 615 A.2d at 1031. Whether a property falls into the exemption is governed by a three-pronged test first laid out in American Museum of Fly Fishing: "(1) the property must be dedicated unconditionally to public use; (2) the primary use must directly benefit an indefinite class of persons who are part of the public, and must also confer a benefit on society as a result of the benefit conferred on the persons directly served; and (3) the property must be owned and operated on a not-for-profit basis." 151 Vt. at 110, 557 A.2d at 904.

11

¶ 27. But before we analyze VCFA's claim for an exemption through the American Museum of Fly Fishing test, we first look to see if there is concurrence of mission between the use (by the State) and ownership (by VCFA) of the property. When property is owned by one nonprofit and leased and used by another, there must be a "concurrence of nonprofit ownership and use" between the owner and the lessee such that the two have a "single mission." Lincoln St., Inc., 159 Vt. at 185, 615 A.2d at 1030. Concurrence of ownership and use is central to the public use exemption and "the concurrence of nonprofit ownership and use is necessary to make [§ 3802(4)] as a whole effective." Id.; see also Broughton, 134 Vt. at 274, 356 A.2d at 523 ("[T]he rule to be followed in Vermont in respect to real property . . . is that there can be no freedom from taxation unless the property is both owned by a qualified body and used by such a body in pursuit of one of its exempt purposes."). In fact, the concurrence requirement is so central to the test that we have analyzed it at various times with the first and third prongs of the American Museum of Fly Fishing test. See Herrick v. Town of Marlboro, 173 Vt. 170, 175, 789 A.2d 915, 919 (2001); Twin Valley Cmty. Servs., Inc. v. Town of Randolph, 170 Vt. 648, 649-50, 756 A.2d 1233, 1235 (2000).

¶ 28. Regardless of where we have placed our analysis, we have consistently held that "[w]here the benefit of an exemption under § 3802 would flow to private individuals . . . rather than to an indefinite class of persons who are part of the public, the use is not public" and the property is not exempt. Lincoln St., Inc., 159 Vt. at 185, 615 A.2d at 1031. Further, we have long held that "the immediate beneficiaries [of a tax exemption given for use by a nonprofit] would be the private individuals who control the lease terms." In re Tax Appeal of Abbey Church of St. Andrew, 145 Vt. 227, 230, 485 A.2d 1263, 1265 (1984).

¶ 29. VCFA argues that because it is a nonprofit corporation, not a private individual, this line of precedent does not apply. However, we addressed this issue in Twin Valley Community Services, Inc., where we set out the requirement for concurrence when the owner and the operator are not the same: both must have a single mission. 170 Vt. at 650, 756 A.2d at 1235

12

(holding that property was exempt from taxation because "[b]oth the taxpayer-owner and the lessee-operator are nonprofit corporations with a single mission, so there is a concurrence of nonprofit ownership and use. Indeed, taxpayer was organized specifically to further the purposes of Upper Valley, which is its only member." (emphasis added)). VCFA argues that we should read our decision in Twin Valley broadly, not requiring concurrence between the missions of the owner and the operator as long as each has a nonprofit mission of some nature. However, this argument ignores the clear wording of Twin Valley, which shows that the two nonprofits must share a single mission in order for the property to be exempt from taxation. Id. We therefore decline VCFA's invitation to reinterpret Twin Valley, especially considering our longstanding policy to strictly construe tax exemptions against the person claiming the exemption. Brownington Ctr. Church, 2013 VT 99, ¶ 9.

¶ 30. Because VCFA's arguments fail the third prong of the American Museum of Fly Fishing test, we need not consider whether VCFA's claim for exemption meets the other two prongs. We therefore consider neither VCFA's argument that State use automatically benefits the public nor the City's argument that VCFA's selective admission process means that the use of the property benefits a definite, rather than indefinite, class of persons. Schulmaier Hall does not qualify for the "public use" exemption of 32 V.S.A. § 3802(4).

Affirmed.

FOR THE COURT:

_____

Chief Justice

13